Shields v. Keys.

SHIELDS v. KEYS, Administrator.

1. **Mechanic's lien: WHEN IT ATTACHES.** A mechanic's lien attaches from the time the work is commenced or materials are furnished; and a purchaser at execution sale under a judgment establishing the lien, takes all the title held by the owner at that time.

2. —— **PARTIES: MORTGAGE.** Where the owner of real estate, upon which there was a mechanic's lien, sold the property, and took a mortgage back to secure the purchase-money, after which he died, it was *held,* that it was not necessary to make his heirs, but only his administrator, party defendant to a proceeding to enforce the mechanic's lien.

*Argu.* WHERE MORTGAGE PASSES. Upon the death of the mortgagee, the mortgage debt and security pass to his *personal* representative.

3. —— **EFFECT OF JUDGMENT ENFORCING LIEN.** It was further *held,* that, by the judgment in such proceeding, establishing the mechan-

ic's lien, and the sale thereunder, the administrator of the mortgagee was estopped from asserting any right to the property under the mortgage, and should be enjoined from selling it under an execution issued on a decree foreclosing the mortgage.

4. Dower: RELEASE OF: JUDGMENT LIEN. A husband entitled to dower in real estate of his wife which she has devised to another, may, after her death, waive and relinquish his right thereto, so that the full title will pass to the devisee of the wife, free from, and unaffected by, the lien of a judgment standing against the husband at the time of the wife's death.

   *Argu.* 1. EFFECT OF WILL. Under the peculiar provisions of our statute Rev., § 2435), the *will* passes the title at once to the devisee, subject to be divested or defeated by the objection of the party entitled to dower.

   *Argu.* 2. VOLUNTARY CONVEYANCE. A wife may in her life-time make a voluntary conveyance of her property, in which her husband may join, and thereby defeat any claim therein, after her death, either by himself or his creditors.

5. Husband and wife: CAPACITY OF WIFE TO ACQUIRE PROPERTY: PURCHASE ON CREDIT. A married woman is capable of acquiring and holding real property to her own separate use; and a purchase by a married woman upon credit, relying upon her son's earnings with which to pay, was upheld. The points that have been heretofore ruled by the court relative to the capacity of married women to contract, stated by COLE, J.

## Appeal from Benton District Court.

### THURSDAY, APRIL 16.

ACTION in equity to enjoin the sale, under execution, of lot four, block thirteen, in Vinton. The property in controversy formerly belonged to Joel W. Catlin, now deceased. While he owned it (in 1855) he built thereon a hotel, since known as the Shields house. Luther Ellis furnished material and performed labor in the erection of the hotel, and held a mechanic's lien thereon for about $590. In November, 1855, Catlin sold and conveyed the property to John H. Shields for $3,500, and took in payment his seven promissory notes for $500 each, payable in one, two, three, four, five, six and seven years from

date, respectively, secured by mortgage upon the property, executed by Shields alone, his wife not joining therein. Shortly after the sale and conveyance to Shields, Catlin died, and the defendant, D. B. Keys, was duly appointed administrator of his estate.

Afterward, Ellis brought suit against Keys, administrator, to enforce his mechanic's lien. No other person than Keys was made defendant in said suit. Judgment was rendered therein in favor of the plaintiff for $517.50, and the claim was established as a mechanic's lien upon the property in controversy, and a special execution was awarded for its sale and the enforcement of the lien thereon. Special execution was issued on said judgment, and the property was sold thereunder to one Jacob S. Hunt, who bid and paid the whole amount of Ellis' judgment and received the sheriff's certificate of purchase of the property. Subsequent to the sale, Keys deposited with the clerk the amount of money requisite to redeem the same, but afterward withdrew and retained it. No redemption was made. This certificate was sold and assigned by Hunt to one Edwin Humphreville, who received the sheriff's deed for the property and shortly thereafter died, leaving David Humphreville, his father, as his sole heir.

While the title was thus held, Keys, as administrator of Catlin, brought suit against John H. Shields, upon the notes given for the property, and to foreclose the mortgage. No person other than John H. Shields was made defendant in said suit. No defense was made by Shields, and judgment was rendered for the amount of the notes due, and those not due (with a rebatement of the interest as to the latter), and a foreclosure ordered.

Afterward, David Humphreville, pursuant to a verbal understanding between his son Edwin (in his life-time) and Mrs. Margaret E. Shields, sold and conveyed the

property to Mrs. Margaret E. Shields, wife of John H. Shields, for $663, that being the amount paid by Edwin therefor and interest thereon up to date of conveyance. Mrs. Shields gave her note for the amount, secured by a mortgage upon the property, executed by herself and husband. All the foregoing matters transpired prior to the 3d day of January, 1860. In January, 1866, Keys caused execution to issue upon his foreclosure judgment against John H. Shields, and placed the same in the hands of the defendant, Bigelow, as sheriff, for service, and the same was levied upon the property in controversy; and thereupon this suit was brought to enjoin the sale of said property under said execution. Upon the filing of the petition a temporary injunction was granted.

The case was sent to a referee; but, before the hearing, and in March, 1866, Mrs. Shields died, having first made a will, whereby she devised the property to her son Alexander, under twenty-one years of age, with the provision, that in case he died without issue or having disposed of the property, remainder over to her other children. This will was duly admitted to probate by the County Court. John H. Shields, her husband, appeared before the court, waived his dower in the property and elected to take under the will. The cause was then revived and prosecuted in the name of the devisee, Alexander E. Shields, by his next friend and brother, John C. Shields. John H. Shields was also afterward, at the instance of the defendant, Keys, made defendant in this action, and thereupon he appeared and disclaimed any interest whatever in the property.

The testimony shows that John H. Shields is insolvent, and has been for several years, and ever since the judgment against him by Keys, as administrator; that Mrs. Margaret E. Shields was his wife up to her death, and had no separate property of her own, either real or per-

sonal, except the property in controversy; that she never paid but $125 on the property, the balance being still unpaid, and the money so paid was derived from her son, John C. Shields, who sent it to her from the army; he having entered the service, under twenty-one, with the promise from his father, that he should have for his own, the money acquired by such service; that John H. Shields and his wife occupied the property as a hotel, from the time of the purchase of Catlin until her death, except one year, when it was rented to R. J. Jackson, and Shields still occupies it; that the proceeds or profits of the hotel were used in the support of the family; that the property has been worth, since 1856, from two to four thousand dollars, the latter is its present value; that the average rental has been two hundred and fifty dollars.

The referee reported that the injunction should be dissolved, and it was so adjudged by the District Court, with costs, against the next friend. The plaintiffs appeal.

*J. C. Traer* and *Smyth & Young* for the appellants.

The mechanic's lien in favor of Ellis was properly established, Keys, the administrator of the estate of Catlin, was the only necessary party. John H. Shields was not a necessary party; he stands in no different position than a subsequent mortgagee. Catlin's interest in the property in controversy, at the time of his death, was that of a mortgagee, and after his death it was a chattel interest, and went to the administrator. He owned no interest in the real estate which would descend to his heirs at law. Consequently they were not necessary parties to a suit to establish a mechanic's lien. 15 Iowa, 114; 2 Greene, 488; Code of 1851, 1337; 3 Gray, 504; 16 Mass. 71; 1 Metc. 336; 20 Pick. 71; 5 Cush. 119; 8 Iowa, 417. The administrator was a necessary party in order that the

amount due Ellis might be correctly ascertained.    Unless there can be some other reason shown for disturbing the judgment of the District Court establishing the mechanic's lien, than the fact that J. H. Shields was not made a party to the proceeding, a court of equity will not disturb the judgment.    The defendant must show affirmatively, that he was injured by the judgment.    On such an application the courts will overlook formal defects and look to the merits of the case. 1 Metc. 336, id. 122; 20 Pick. 71; 5 Cush. 119.

The mechanic's lien, in favor of Ellis, attached to the property in controversy, from the date of the furnishing of the first material for the house erected for Catlin, which was prior to the sale of the property to Shields, and the execution and delivery of the mortgage to Catlin, by Shields. 11 Iowa, 520; 12 Iowa, 287, 119, 276.    J. H. Shields occupies no different position in relation to this property, than a subsequent incumbrancer; he purchased the property with notice of the outstanding mechanic's lien in favor of Ellis; consequently his purchase can in no way affect the rights of Ellis, or any purchaser of his interest. Mortgagees, or other lien holders, except of the same kind, need not be made parties to a proceeding to establish a mechanic's lien.  See 15 Iowa, 114, and cases there cited.

*John Shane* and *C. H. Conklin* for the appellee.

1. It is the well-settled common law rule, when property is purchased by the wife during coverture, and paid for, or is to be paid for out of the earnings of the wife, or joint earnings of the husband and wife, that the property so purchased, and the profits thereof, inure to the benefit of the husband's creditors. See *Duncan* v. *Roselle*, 15 Iowa, 501; *Ticonic Bank* v. *Harvy*, 16 id. 141, 143, 144, 145; *Jones* v. *Crosthwaite*, 17 id. 393, 402; *Laing* v. *Cunningham*, id. 510, 511, 512, 513; see also the com-

mon law rule, 3 Abbot's Digest, N. Y. p. 311, § 130, p. 316, §§ 186, 190.

2. By the death of his wife, John H. Shields became vested in fee with the undivided one-third of all the real estate of which the wife died seized. Rev. 1860, § 2477, amended by chapter 151, Laws of 1862.

And this interest is equitably subject to be sold in payment of the claims in favor of Catlin's estate. *Tompkins* v. *Fonda*, 4 Paige, 448; *Lawrence* v. *Miller*, 2 Comst. 245, 254; *Edmeston* v. *Lynde*, 1 Paige, 637; *Stewart* v. *McMaster*, 5 Barb. 438, 447; and in *Yates* v. *Paddock* (10 Wend. 528), it is decided " that dower at common law is a mere right of action."

The above cited cases were decided and the decisions rendered under the rule regulating dower as at common law, but by our law the widower is entitled to a dower interest of one-third in fee. The reason, therefore, that the principles embodied in the foregoing decision should be applied to the case at bar have become, by the change in the law of dower, greatly strengthened. If the dower interest could be reached for the payment of debts, when the debtor had but a mere right of action in the property, much more should it be reached when the debtor has a fee simple right to the one undivided third of all the real estate of which the wife died seized.

3. The proceedings in the District Court, by Luther Ellis, to establish a mechanic's lien upon the property in question, and under which the property was sold, were void, for want of proper parties, and, therefore, the sale had, under that decree, conferred no right or title on the purchaser. John H. Shields, having the legal title in the property, was an indispensable party defendant in the mechanic's lien proceeding. So were the heirs of Catlin indispensable parties.

The proceeding to establish a mechanic's lien is one

in derogation of the common law, and must be strictly pursued. 2 Greene, 508, 510; 2 Iowa, 488; 7 id. 77.

An administrator represents the personal estate of his intestate and nothing more. He has nothing to do with the realty unless wanted for the payment of debts. The real estate descends to the heir. 7 Iowa, 324, 331; 3 Cow. 299; 7 Johns. Ch. 45. He is not entitled to receive the rents and profits of the realty. 6 Iowa, 123, 130; 7 id. 331; 17 Ill. 487; 16 N. Y. 278. Nor can a personal judgment be rendered against the administrator as such. 6 Iowa, 274; id. 123, 129, 130. And it has accordingly been held, that a sale on execution, issued on such a judgment, against an administrator, conveys no title or interest in the realty. In this case the question arose between the heirs and a party claiming under a sale by virtue of such a judgment and execution. 5 Iowa, 124, 138.

The administrator may be, but the heirs must be, parties, or the plaintiff takes judgment at his peril; they are not bound. 2 Greene, 513. And in such case the courts say that the plaintiff takes his lien and special execution at his peril; that such parties as should have been, and are not, made parties, are not bound.

The proprietors of the property must not only be privy to the contract, but must be made parties defendant, or the proceedings will be nullity. 11 Iowa, 530; 2 id. 490, 491. In the latter case (2 Iowa) it is held that the action to establish a mechanic's lien is not a proceeding against the property; that judgment must be against some person as defendant, and cannot be against the land or building alone; and that the court cannot turn aside to render judgment against some person or thing not a party to the suit, and that the proceedings must be against the owner who entered into the contract.

. In proceedings at law, as well as in equity, and more especially in all actions designed to settle or affect the

title to real estate, there are certain parties who are regarded as indispensable, and the books uniformly hold that the presence of those parties cannot be dispensed with, and that the court cannot make any decree or enter any judgment affecting the subject of the action until they are before the court; and that an attempt to do so would be a mere nullity; that it not only would not bind those absent parties, but it would be equally ineffectual to bind those who were made such. 1 Van Sant. Eq. Pr. 70, 71; Barb. on Parties, 322, 327, 496, 539, 546, 556. The same doctrine is held in a well considered case, by Cowen, J., in 20 Wend. 260, where it was held that a decree of foreclosure in an action against the mortgagor alone, after he had conveyed his equity of redemption, was a mere nullity, and that there was no jurisdiction to render any decree whatever.

Cole, J. — I. The first question presented is, as to the title or interest acquired by the purchaser under the mechanic's lien foreclosure sale. The plaintiff in that suit was the mechanic, Luther Ellis, and the only defendant was D. B. Keys, administrator of J. W. Catlin, deceased. The lien accrued before the sale of the property by J. W. Catlin to John H. Shields, and existed upon the property at the time of the sale and conveyance to Shields. By the mechanic's lien law, in force at that time, it was provided (Code of 1851, § 981): "Every person who, by virtue of a contract with the owner of a piece of land, performs work or furnishes material, especially for any building, and which material is used in the erection or reparation thereof, has a lien upon the land, including the building, with its appurtenances, for the amount due him for work or material, against all persons, except incumbrancers by judgment rendered and by instrument recorded, before the com-

*1. MECHANIC'S LIEN: when it attaches.*

mencement of the work or the furnishing of the material." The mechanic's lien in favor of Ellis attached to the property before the sale and conveyance to Shields, and was, therefore, paramount to the title conveyed by the deed. *Monroe* v. *West*, 12 Iowa, 119; *Carter* v. *Humboldt Fire Ins. Co.*, id. 287.

Catlin, having conveyed the property prior to his decease, and taken a mortgage back to secure the purchase price, the right to the mortgage debt and security, upon Catlin's death, passed to his personal representative. *Baldwin* v. *Thompson*, 15 Iowa, 504; *Burton* v. *Hintragar*, 18 id. 348. No rights, therefore, in the property passed to the heirs of Catlin; and, hence, it was not necessary to make them parties to the suit by Ellis to enforce his mechanic's lien. But, when the title of the mortgaged property is in the ancestor at the time of decease, the heirs should be made parties to a foreclosure suit. 2 G. Greene, 513. And, while subsequent mortgagees and purchasers are proper parties to a suit to foreclose a mortgage or enforce a mechanic's lien (*Semple* v. *Lee et al.*, 13 Iowa, 304), yet they are not indispensable parties. *Street* v. *Beall & Hyatt*, 16 Iowa, 68; *State* v. *Eads*, 15 ib. 114.

2. —— parties: mortgage.

Keys, as administrator of Catlin, was a necessary and proper party to the suit brought by Ellis to enforce his mechanic's lien. The judgment in that case conclusively established the amount due to Ellis, and by the law, the lien, as we have seen, attached to the title held by Catlin at the time the work was commenced and material furnished. Leaving out of view for the present the rights of purchasers subsequent to the time the lien attached, it is very clear, from the foregoing, that the purchaser at the sale under the mechanic's lien judgment of *Ellis* v. *Keys, Administrator*, took the title to the property

which was held by Catlin at the time the lien attached. And that was the fee simple title.

II. The next question in order is, as to the effect of the judgment establishing and enforcing the mechanic's lien in favor of Ellis, upon the rights of Shields, the subsequent purchaser, and upon the rights of Keys, administrator, under the mortgage made by Shields to Keys' intestate, Catlin.

*3. —— effect of judgment enforcing lien.*

It was *held* in *The State* v. *Eads* (15 Iowa, 114), that, after a sale and deed under a mechanic's lien judgment, a junior mortgagee, though not made a party to the suit, was concluded and could not redeem. See also the authorities there cited. The writer of this opinion, and DILLON, Ch J., without affirming or disaffirming the holding in that case, arrive at the same conclusion in this, as do WRIGHT, J., and BECK, J., who are content to affirm and follow that case. The same result, to wit, of holding Keys, administrator of the mortgagee, or judgment creditor of the junior or subsequent grantee, concluded by the mechanic's lien judgment, is reached and required by the special facts of this case.

It will be remembered, that Keys, administrator, was a party to the mechanic's lien suit. It was his duty in that suit to assert and protect every right or claim which he had in or to the property, certainly if subordinate to the lien sought therein to be enforced, and the judgment in that case became conclusive and binding upon him as to every right which he did or might have asserted therein. A judgment was rendered against Keys, administrator in that suit, and the property was sold thereunder. He was thereby estopped from asserting any right to the property as against the judgment. It would be strange indeed, if Keys could issue execution upon a judgment in his favor, and sell the identical property which had just before been sold under execution against him, upon

Shields v. Keys.

a lien paramount to that upon which his judgment was rendered. As between the purchaser under the special execution against Keys, enforcing the mechanic's lien, and a claim by Keys to sell the same property under a junior lien, there can be no question as to the right of such purchaser to enjoin the sale; because Keys must be estopped by the judgment against him from claiming any right adverse to it. And it will be remembered that these plaintiffs have acquired the title, and stand in the place of the purchaser at the mechanic's lien sale.

We conclude, therefore, that Keys was the only necessary party to the mechanic's lien foreclosure suit, and that the purchaser at the sale, under the mechanic's lien judgment, acquired a title to the property, free from any right in, or equity against it, in behalf of the defendant therein.

III. Upon the death of either husband or wife, the survivor is entitled to one-third in value of the real estate **4. Dower: release of judgment lien.** of which the deceased was seized during the coverture, etc., as dower. By our statute, the husband of a deceased wife takes the same interest in her real estate, as the widow of a deceased husband takes in his, and the estate by curtesy is abolished. Rev. § 2479. Our statute also enacts (Rev. § 2435 [1407]), " The widow's dower cannot be affected by any will of her husband, if she objects thereto, and relinquishes all rights conferred upon her by will." This section, by force of the one just before cited, applies also to the rights of the husband under any will of his wife.

In this case, the wife, Margaret E. Shields, devised the real estate in controversy to her son Alexander; and, that being all her property, she made no provision for her husband, or her other children. The husband does not object to this will of his wife, but assents thereto, and waives all claim of dower in the real estate devised thereby. The defendant in this action claims, that, if the

whole of the real estate in controversy is not subject to his execution as the property of John H. Shields, at the least, one-third thereof, it being his dower interest therein, is subject thereto. And the question is presented, whether a person entitled to dower at his or her election may waive such right to the prejudice of creditors.

If the one-third in fee (the dower right under our statute) was cast by operation of law, at the death of the wife, upon the husband, then, such title being thereby vested in the husband, the lien of any judgment against him would attach to such title, and he could not divest himself of it to the prejudice of his judgment creditors; nor, perhaps, could he do so voluntarily, to the prejudice of any creditors, whether they had judgment liens or not.

But, under the peculiar provisions of our statute, the *will* passes the title at once to the devisee, subject to be *Argu.* 1. Effect divested or defeated by the objection of the of will. party entitled to dower. If the party thus entitled do not object, the devisee, it is clear, takes *by the will*, and would not be held to take the title or any portion of it from the party, who might, on objection made, have become entitled to the third thereof.

From this it appears, that no absolute or positive legal rights in the property have as yet accrued to the defendant by virtue of his judgment, or the lien thereof. At most, it is but a supposed equity which would authorize the judgment creditor to control the election of his debtor, as to whether he would take under the will or the statute. Let us inquire as to the potency of that supposed equity.

If the wife had seen fit, prior to her death, to make a voluntary conveyance of the property to her son, there is *Argu.* 2. Volun- no question but that the husband might have tary convey- ance. joined in the conveyance, and thereby have defeated any claim therein after her death, either by himself or creditors. Now, suppose that the wife preferred

to pass the title to the son by a devise, rather than by deed, and the husband consented thereto, or did not object, and does not afterward object. The title would pass just as effectually by the will as by the deed, and the creditors are no more injuriously affected by the one than the other; nor is there a more potent equity for them in the one case than in the other. It seems to us, therefore, that the creditors have not the right to control the husband as to his election to take under the will or statute, or to compel him to object to the will, and insist upon dower, in order that the same may be subjected to the payment of his debt.

The authorities cited by appellee's counsel, in opposition to this view, do not sustain their position. The case of *Tompkins* v. *Fonda* (4 Paige's Ch. 448) simply holds, that a widow's dower may be subjected to the payment of her debts, and that, if she does not have it *assigned*, a court of equity, at the suit of creditors to subject it, will order it to be assigned, so that it may be reached by execution. The other cases cited are not as much to the point as this. They are, *Lawrence* v. *Miller*, 2 Com. 245, 254; *Edmeston* v. *Lyde*, 1 Paige's Ch. 637; *Stewart* v. *McMartin*, 5 Barb. 438, 447.

IV. The next question made is, whether Mrs. Margaret E. Shields, who was a married woman, and without

5. HUSBAND AND WIFE: capacity of wife to acquire property: purchase on credit.

any separate property of her own, could by any contract acquire a title to the real estate in controversy? She was the wife of John H. Shields, the defendant in the execution, the levy of which is sought to be enjoined in this action. There is no controversy but that she is the owner and holder (provided she has the capacity to take and hold) the right or title acquired by the purchaser at the sale under the mechanic's lien in favor of Ellis against Keys, administrator.

Upon the question of the capacity of married women to make contracts, in this State, and their obligations thereunder, the following points have in substance been ruled by this court: That, where a married woman is sued at law upon a promissory note and the fact of coverture is not disclosed by the petition, an answer averring coverture, at the time of making the note, constituted a good defense to the action *at law* thereon. *Rodemyer* v. *Rodman*, 5 Iowa, 426. That, where a married woman had received a bond for title to certain real estate, and given her promissory notes, signed also by her husband, as surety, in consideration therefor, she could not be made liable in an action *at law* upon the notes. *Jones* v. *Crosthwaite*, 17 id. 393. That, where a married woman signed a promissory note as surety, and pledged certain of her property for its payment, such property would be subjected in equity to the payment of the note. *Patton* v. *Kinsman*, 17 id. 428. That the earnings of the wife during coverture belong to the husband; and, where the earnings have been invested in property and the title taken in her name, such property will be subjected to the payment of the husband's debts. *Duncan* v. *Roselle et ux.*, 15 id. 501; *Ticonic Bank* v. *Harvey et al.*, 16 id. 141; *Laing* v. *Cunningham*, 17 id. 510. This common law rule is now changed by statute. See Laws of 1866, ch. 24. That, where the wife takes the title to property (which is really the husband's) in her own name for the purpose of defrauding the husband's creditors, such property will be subjected to the payment of his debts. *Ticonic Bank* v. *Harvey et al.*, and *Laing* v. *Cunningham*, *supra*. And in the first of the two cases last named, it was expressly stated, "that in equity the wife is capable of taking real property to her own separate use, and of holding it independently of her husband." And when the wife has separate property she may use it in trading or the like, without subjecting

Shields v. Keys.

the profits to seizure for the husband's debts. *Mitchell & Sons* v. *Sawyer and wife*, 21 Iowa, 582, and authorities there cited.

It has never been held by this court, but that a married woman could, either at law or in equity, purchase and hold the title to real estate in this State, independently of her husband and regardless of whether she had a separate estate or not. And a reference to the cases above and the authorities therein referred to will abundantly show, that, in equity, and aside from any statute, a married woman is capable of acquiring and holding real property to her own separate use. See also and especially *Darby* v. *Callaghan*, 16 N. Y. 71, and *Knapp* v. *Smith*, 27 id. 277.

In this case, the married woman, Mrs. Margaret E. Shields, at the time of her purchase, had no separate estate; but she did have a son in the military service, from whom she expected to and did receive money, a part of which was applied toward the payment of the property in controversy. Now, if, as was held in *Mitchell* v. *Sawyer* (*supra*), a married woman may borrow money with which to purchase real property in her own name, relying upon receiving money from her father's estate with which to repay it, and thereby acquire and hold a perfect title in her own separate right, which facts appear from the record in that case, why may not a married mother purchase upon credit, relying upon her son's earnings with which to pay, and also acquire a good title?

It seems to us, even in view of the principles of equity, aside from any statutory provisions, that Mrs. Margaret E. Shields was possessed of the capacity to acquire and hold the title to the property in controversy; and that no advantage or right results to the defendants by reason of the fact that she was a married woman at the time she acquired the title. Of course, if the purchase was made by the husband for his own benefit, and the title taken in

the name of the wife to defraud creditors, or, if the wife made the purchase and used the means of the husband in the payment of the consideration, or the like, then the property could be subjected to the payment of his debts. But in this case the fraud charged in the answer is positively denied in the reply, and there is no sufficient proof, in the opinion of the majority of the court, to sustain the charge. WRIGHT, J., not concurring. Besides, the referee bases his conclusions of law upon the incapacity of the married woman to take or hold the title to the property in her own right; and the counsel for appellees rest their argument in this court to sustain the judgment below, upon the same basis. (A supplemental argument by appellees' counsel, filed since this opinion was prepared, does make the question of fraud distinctly; but it is not necessary to examine it further than to state our conclusion as above.)

The judgment of the District Court is reversed, and the injunction made perpetual.

Reversed.