## BESSER *v.* JOYCE, ET AL.

FRAUDULENT CONVEYANCES—BANKRUPT PROCEEDINGS - CREDITORS' RIGHTS.

A creditor who is not made a party to proceedings in kruptcy, is not precluded from subsequently impeaching a fraudulent conveyance of real property, made by his debtor prior to such proceedings, but kept concealed from his assignee until after the termination of such proceedings.

MARRIED WOMEN—SEPARATE ESTATE—HUSBAND'S INTEREST— TENANT BY CURTESY.

A husband, since the adoption of the state constitution, has no such interest or estate in his wife's separate real property, during her life, as can be taken on execution by his creditors, and his joining with her in a deed, voluntarily, and without consideration, to enable her to alienate the same, cannot be deemed a fraud upon his creditors, although he thereby bars his right to become a tenant by the curtesy in such property, after her death.

DECLARATIONS OF GRANTOR—EFFECT OF.

The declarations of a grantor, impeaching her own title to real property in her possession, are admissible against her grantee. But her declarations in support of such title are not admissible in his favor, except as accompanying her possession or acts of ownership over the same, and being explanatory thereof.

IDEM—EVIDENCE.

Her declarations, that she had purchased of a particular person, and paid a definite sum out of a certain fund, are not competent evidence of such facts.

APPEAL from Multnomah.   The facts are stated in the opinion.

*William Strong & Sons*, for appellant.

Wallace filed a petition in bankruptcy on May 30, 1868, and on proper proceedings had, was duly adjudged a bankrupt in June of that year.   An assignment was made by the register to the duly elected and qualified assignee.   Wallace had no interest in the property described in the complaint prior to May 30, 1868, for which a bill in equity could be maintained by a creditor for any cause.   (U. S. Statutes at Large, vol. 14, 522; *Bradshaw, assignee,* v. *Klein,* vol. 1, N. B. Reg. Rep., 542; *Mays* v. *Manufacturers' National Bank of Philadelphia,* vol. 4, N. B. Reg. Rep., 446; Ib., 660; *Gifford, et al.,* v. *Helms, et al.,* U. S. Supreme Court, vol. 19, N. B. Reg. Rep., part 3, p. 113.)

Fradulent intent is a question of fact, and must be proved like any other fact.   The burden of proof rests upon the party seeking to establish the fraud.   (General Laws of Oregon, 523; Wharton's Law of Evidence, vol. 1, sec. 366; vol. 2, sec. 1248.)

The property, real and personal, of a married woman, acquired by her own labor, cannot be holden for the debts of her husband.   (General Laws of Oregon, 663, sec. 4.)

Evidence of fraud, in order to vacate a solemnly executed instrument, must be clear and strong.   (Wharton's Ev., vol. 2, sec. 932; *Field* v. *Gaston,* 12 Iowa, 218.)

*George W. Yocum,* for respondent.

There is no issue upon the question of bankruptcy to be tried.   If the appellant had relied upon showing that the assignee in bankruptcy was the owner of the property in the complaint described, he should have pleaded it in abatement. There was no conveyance of any property to the assignee, and he took nothing.   (Bump's Bankruptcy.)

A diligent junior judgment creditor may gain a priority over a negligent senior judgment creditor, upon equitable

assets and property fraudulently conveyed by the debtor. (1 Story's Eq. Jur., sec. 421; *Bridgman & Co.* v. *McKissick & Bone*, 15 Iowa, 260; *Pratt* v. *Clemens*, 4 W. Va., 443.)

A creditor acquires a specific lien upon equitable assets from the filing of his bill. (*Corning* v. *White*, 2 Paige, 567; *Farnham* v. *Campbell*, 10 Paige, 598; *Weed* v. *Pierce*, 9 Cowen, 722; Story's Eq. Jur., sec. 421; *Blake* v. *Biglow, et al.*, 5 Georgia, 437.)

By the Court, WATSON, J.:

This suit was instituted by the respondent, Sarah Besser, in the circuit court for Multnomah county, against the appellant, W. H. D. Joyce, and J. B. Wallace and others, to set aside a deed and transfer of property from said J. B. Wallace and wife to the appellant, on the ground of fraud, and to obtain an account of the rents, profits and proceeds of the property so conveyed and transferred, and to subject the same to the payment of her judgment against Wallace.

The complaint charges that Wallace bought the property and paid for it with his own money, but procured the deeds therefor in the name of his wife, Margaret E. Wallace, since deceased, to hinder and defraud his creditors, and that he afterwards, on the 7th day of March, 1878, joined with her in executing the conveyance and transfer of such property (sought to be impeached by this suit) to the appellant, without any consideration, and for the purpose of hindering and defrauding his creditors, with the full knowledge and co-operation of the appellant, who was a participant in the fraud.

The answer of the appellant puts these allegations in issue, and avers that the property belonged to Mrs. Wallace as her separate estate; that it was purchased by her for her own use, and paid for out of her own separate funds; and that said conveyance and transfer of March 7, 1878, was made by her and her said husband in good faith, and for a good and valuable consideration.

The answer also avers that on the 8th day of June, 1868,

J. B. Wallace was duly adjudged a bankrupt, upon his own petition, voluntarily filed in the district court of the United States for the district of Oregon, which adjudication was entered on the 15th day of the same month; and notice was duly given of the meeting of the creditors of such bankrupt to prove their claims against his estate, and choose an assignee.

The replication puts in issue the averments in the answer, as to the purchase and payment for said property by Mrs. Wallace, and her ownership thereof. Admits the adjudication in bankruptcy, but denies that Wallace was ever discharged in the proceeding in which such adjudication was made.

Mrs. Wallace came into the state of Oregon in 1864, possessing, in her own right, about one thousand dollars in money—five hundred dollars of which was then loaned to Marr Bros., of Portland, Maine. On the 2d day of December of the same year, she married J. B. Wallace.

The real property in dispute is situated in Portland, Oregon, and was purchased in four distinct lots or parcels, at various times from 1866 to 1873. All the deeds were made to Mrs. Wallace. The debt represented by respondent's judgment was due from J. B. Wallace to Luzerne Besser, and in part, at least, accrued prior to any of such purchases. Subsequently it was assigned to the respondent, who recovered the judgment upon it.

Mrs. Wallace was a sister of the appellant. She died March 8, 1878. The evidence was all taken and submitted to a referee, to find both the facts and the law. He found that lot four, in block "A," Caruthers' addition to the city of Portland, which was the first tract purchased, and the consideration for which was twelve hundred dollars, was bought by J. B. Wallace, and paid for out of his own funds, and that the taking of the deed therefor, in the name of his wife, was intended by them to be and was a fraud upon his creditors.

This purchase was made July 6, 1866. But the referee found, also, that the subsequent purchases of the three remain-

ing tracts or parcels, which were all situated in the same block, were made by the wife with her own separate funds for her own use, and in good faith. The aggregate price of all these parcels was six hundred dollars.

After these purchases Wallace and his wife took possession of said property and occupied it as a home until her death. Wallace was all this time insolvent. The referee also found that Wallace was duly adjudged a bankrupt in 1868; that an assignee was duly chosen and appointed, but never exercised any control over, or commenced any proceedings to cause any of said property in controversy to be appropriated to the payment of the bankrupt's debts, or to reduce the same, or any part thereof, into his possession; and that Wallace was never discharged in such proceeding.

That the deed of March 7, 1878, from Wallace and wife to Joyce, as to lot four, in block "A," and as to Wallace's life estate in the remaining three tracts in said block "A," (which were found to be the separate property of Mrs. Wallace) was intended by the parties thereto to operate as a fraud on Wallace's creditors, and was executed without any consideration therefor; but that the conveyance of Mrs. Wallace's interest in said three last mentioned tracts or parcels to Joyce by said deed was made in good faith and for a valuable consideration.

That the proceeds of the personal property had all been expended in the settlement of the expenses of the last illness and funeral of Mrs. Wallace by the direction of Wallace, except certain articles which had been returned to him.

That the balance of rents and profits arising from said lot four, to be accounted for by appellant, was one hundred and ninety-three dollars.

The referee found, as a conclusion of law, that the conveyance of lot four, in block "A," and the life estate of Wallace in the remaining tracts, was fraudulent, and that respondent was entitled, in equity, to have the same sold, and the proceeds applied toward the satisfaction of her judgment, and was also entitled to have said sum of one hundred and ninety-

three dollars applied in the same manner.   The circuit court, on respondent's motion, confirmed the report, and rendered a decree accordingly.

The appellant contends that the findings of fact by the referee are not warranted by the evidence, and that the court below erred in not setting aside the report on that ground.

We have carefully considered the testimony for both parties, and while the whole transaction is involved in much obscurity and some doubt, we are convinced that the findings of the referee upon the facts are not against the weight of testimony properly admitted in the case, but are even sustained by a preponderance of such testimony.

It is evident that Mrs. Wallace did not have money enough of her own, on July 6, 1866, to pay the sum of seven hundred and fifty dollars, which must have been paid at that time on the purchase of lot four.   The greater portion of this, if not all of it, must have come from Wallace, and the fact that he was receiving considerable sums of money at or about that time, although insolvent, shows it was in his power to have furnished it, whether he did so wholly or not.   The sums he is proven to have received were large enough for the purpose. And there is nothing whatever to indicate that her subsequent earnings, which appellant claims paid off the balance of four hundred and fifty dollars, did not, in law, belong to her husband.

Wallace swears that he bought and paid for lot four with his own money, and took the deed in his wife's name to secure it as a home.   L. Besser, respondent's husband, and C. D. Burch and Clark Hay, both of whom worked with Wallace at the time this purchase was made, all corroborate Wallace on this point, by testifying to admissions made by Mrs. Wallace to them, at various times, substantially agreeing with Wallace's testimony.

There is but little competent evidence on the other side to meet this proof.   Mrs. Wallace's declarations, as testified to by several witnesses for the appellant, that she had purchased

this lot and paid for it with her own separate estate, were inadmissible as evidence of such facts. But even had they been competent, still the preponderance of testimony would have remained on the side of the respondent.

In *Fahie* v. *Lindsay*, 8 Oregon, 479, this court held that it could not reverse a decree based on the findings of fact of a referee, unless such findings were clearly against the weight of the testimony. But we do not think it necessary to invoke the doctrine of that decision in passing upon the questions we have been considering here.

We do not deem a particular examination of the testimony, in this place, either necessary or desirable, as we fully agree that the circuit court decided properly when it confirmed the report as to the findings of fact. This conclusion disposes of the case as to lot four, unless the proceedings in bankruptcy, as stated in the answer, and found by the referee, should be held to bar the respondent's suit.

It seems to us to be a sufficient answer to this defense, that L. Besser, to whom the debt sued upon here was then due from Wallace, was not a party to or connected with that proceeding, in any manner whatever. His name and demand were omitted from the bankrupt's schedule, while at the same time the bankrupt's interest in the property in controversy, was also intentionally omitted from his schedules, and successfully concealed from his assignee until he had been discharged and his authority had terminated. (*Barnes* v. *Moore*, 2 N. B. R. Reps., 573; *Hallinshead* v. *Allen*, 17 Pa. St., 275.)

A further question arises upon that portion of the decree subjecting a life estate in the three remaining tracts, in block " A," which have been found to have been the separate property of the wife, to the payment of respondent's judgment. We are of the opinion that this portion of the decree is erroneous. A husband has no life estate in the separate real property of his wife, in this state, during her life-time. Such has been the uniform construction placed upon the provision

of the state constitution respecting the separate property of married women; and similar provisions in statutes in other states have received the same interpretation. He has no estate or interest therein during the life of his wife, that he can convey by his separate deed, or that can be taken by his creditors on execution, or that will pass to his assignee in insolvency. (*Rugh* v. *Ottenheimer*, 6 Or., 231; 2 Bishop's Law of Married Women, secs. 147, 150, and cases cited; *Staples* v. *Brown*, 13 Allen, 64.)

And the husband is not guilty of any fraud on his creditors, if, without consideration, he joins with her in executing a deed by which the property is conveyed to a stranger. His estate does not vest until the death of his wife. The whole interest is hers until then; and while the law has placed her under a disability to convey her own property without her husband will join her in executing the deed, it is obvious that this disability was not imposed for the benefit of the husband's creditors, and that he is neither legally nor morally bound to withhold his assent to her alienations of her own separate property, in order to preserve for them the possible advantages which might arise in the event of his surviving her, and becoming tenant by the curtesy, in her separate real property. (2 Bishop's Law of Married Women, sec. 452; *Silsby* v. *Bullock*, 10 Allen, 94; *Lynde* v. *McGregor*, 13 Allen, 182; *Shields* v. *Keyes*, 24 Iowa, 298.)

The referee evidently took the account of rents and profits from March 7, 1878, to the date of his report, Feb. 12, 1880, which was proper, and the amount found in Joyce's hands, to be applied on respondent's judgment, was correctly determined.

The decree appealed from must be modified so that it shall not affect any estate or interest in any of the three tracts in block "A," which were the separate property of Mrs. Wallace, at the time the deed of March 7, 1878, to Joyce, was executed. And thus modified it will stand as the decree of this court. Appellant recovers costs on the appeal.

Decree modified and affirmed.