THE SECOND NATIONAL BANK OF ROCKFORD, ILLINOIS, v. GAYLORD ET AL.

1. **Fraudulent Conveyance:** PURCHASE BY HUSBAND WITH WIFE'S MONEY: TITLE TO WIFE: LIABILITY FOR HUSBAND'S DEBTS. A husband may aid his wife in procuring title to real estate, and the same cannot be subjected to the payment of his debts, provided he does not furnish any of the means to pay for it. Compare *Shields v. Keys*, 24 Iowa, 298, and *Corning v. Fowler*, Id., 584.

*Appeal from Buchanan Circuit Court.*

SATURDAY, JUNE 13.

ACTION in equity to subject certain real estate, the legal title to which is in Kathinka Gaylord, wife of E. S. Gaylord, to the payment of a judgment against her husband, her co-defendnat, on the ground that the real estate was conveyed to said Kathinka for the purpose of defrauding the creditors of her

co-defendant. Judgment for the defendants, and the plaintiff appeals.

*Jewell & Shellito*, for appellant.

*Lake & Harmon*, for appellee.

SEEVERS, J.—In 1873 the plaintiff obtained a judgment against the defendant E. S. Gaylord, which remains wholly unpaid, and the said Gaylord is insolvent. In 1882, as the plaintiff claims, E. S. Gaylord purchased the land in controversy, and had the same.conveyed to his wife for the purpose of defrauding his creditors. The defendants concede the purchase, but claim that it was made for Kathinka Gaylord; that she paid for the same with her own means; and that her husband has no interest whatever in the real estate.

We find that E. S. Gaylord is about sixty years of age. He ascertained that there was about 1,100 acres of unimproved land in Buchanan county belonging to non-residents. Either on his own motion or at the request of his sons, he made efforts to lease it for the latter, but in this he failed. He ascertained, however, that the land was for sale, and finally purchased it for the sum of $13,446. The purchase was made by correspondence, and in the first letter written by E. S. Gaylord to the agent of the owner, he stated that the " title will go to my wife, Kathinka Gaylord, as she furnishes the money." E. S. Gaylord and wife went to Dubuque to complete the purchase, and there was then paid on the land by one Elliott $1,440. After making the contract, Mrs. Gaylord sold 160 acres of the land to Elliott, at an advance of three dollars per acre over the contract price, and with Mrs. Gaylord's consent the money above mentioned was paid by him on the contract, and she agreed to convey 160 acres of the land to Elliott when she obtained a title. No conveyance was made at the time the money was paid, but a contract was entered into whereby Mrs. Gaylord was to obtain the title when she paid the balance of the purchase-money. E. S. Gaylord

thereupon entered into negotiations with one Campbell, whereby the latter agreed to and did loan a sufficient sum of money to pay for the land. There was a mortgage taken on the land to secure the money so loaned, and it was executed by both of the defendants. Mrs. Gaylord agreed to pay $12 per acre for the land. She sold, in addition to the land sold Elliott, 320 acres at the average price of $18 per acre. From the land sold there was realized upwards of $8,000.

Mrs. Gaylord testifies in substance that she paid $400 of her own money on the land. There is no evidence tending to show that E. S. Gaylord paid anything whatever, or that he had the ability to do so. Nor is there any evidence tending to show that he has in any manner used or controlled it since the execution of the mortgage to Campbell. The most that can be said is that he, on his own motion, or as the agent of his wife, devoted his time to making and completing the purchase of the land for her. We are satisfied that he did not at any time intend to purchase for himself. There is no evidence tending to show that E. S. Gaylord, in doing what he did, intended in fact to defraud his creditors. He evidently thought the land was cheap at the price, and therefore he induced his wife to make the purchase, or he purchased it for her. Mrs. Gaylord had full power to contract for and purchase the land, relying on her own ability to sell a portion of it at an advance, and thus pay for it.

In *Shields v. Keys*, 24 Iowa, 298, it was held that a married woman could acquire real estate; and a purchase by her on credit, in reliance on the earnings of a minor son, with which to pay for it, was upheld. And in *Corning v. Fowler*, 24 Iowa, 584, it was held that a creditor of a husband is not entitled to have established a lien on a wife's land for improvements made by the husband thereon, nor can the same be subjected to the payment of the creditor's claim to the extent of such improvements. The logical result of these two cases is that a husband may aid his wife in procuring the title to real estate, and the same cannot be subjected to the payment

of his debts, provided he does not furnish any of the means required to pay for the real estate. One man may aid another by advice, and by correspondence bring about the sale and purchase of real estate. But he has no such interest in such real estate as his creditors can subject to the payment of debts. A husband may aid his wife to the same extent, and that is all that was done by E. S. Gaylord in this this case.

AFFIRMED.