Day, J.
l. Dedication : mentlmunioition!orpora" I. The question which first presents itself is as to the character of the interest possessed by the government in the strip of land lying between the lots abutting on Front street and the river, after the passage of the act of congress of’ July 2, 1836.
This act, having reference to the laying off of the city of Burlington, provides “ that a quantity of land of proper width, on the river bank at the town of Burlington, and running with the said river the whole length of said town, shall be reserved from sale (as shall also the public squares) for public use, and remain forever for public use, as public highways, and for other public uses.” This statute operated as a qualification upon the title of the govern- *90 meat. Before its passage this title was absolute, uncontrolled, and the jus disponendi, for any and all purposes, was unaffected. After its passage and the sale of lots thereunder, the public acquired a right in this reserved strip for a highway and other public uses; and to the extent of the right acquired by the public, that of the government was limited and controlled. The absolute power of disposition was gone. The use was dedicated to the public. The act of congress making this dedication was in the nature of a contract which could not afterward be abrogated or repealed. Vide Barclay v. Howell’s Lessee, 6 Pet. 498; City of Cincinnati v. White’s Lessee, id. 430; New Orleans v. U. S., 10 id. 711 (721).
The title still remained in the government, but it was held in trust and burdened with conditions. The government had power to grant this title, but could confer .no greater interest than itself possessed. The grantee must take it with the same qualifications, subject to the same conditions, and burdened with the same trusts, which attached to it in the hands of the grantor.
This being the tenure by which the property was held, the United States, by act of congress of February 14,1853, relinquished the title of said property to the city of Burlington, on the condition that “ it should in no manner affect the rights of third persons therein, or the use thereof.” The effect of this statute was to subrogate the -city to the rights of the government in this property. And as the power of absolute disposition did not reside in the government, such power did not pass to the city.
The city took it for the same purposes for which the government held it, subject to the same trusts and affected by the same conditions. The city acquired the right to dispose of it for public uses, because it was reserved to such uses by the government.
But, as the city could not, without a breach of trust, devote this reservation to private uses, it cannot convey it *91 to others, to be devoted to private purposes. Having only a qualified title, the city cannot convey an absolute one.
2..— riparian tions. ’ II. Having determined the character and condition of the original reservation, the next inquiry is as to the condition of the accretion. And it seems to he the dictate of reason and justice that the incident should partake of the same character, and be held hy the same tenure as the principal. It seems difficult to conceive of its sustaining a different character.
This idea commends itself so readily to the judgment that it scarcely needs support from former adjudications. Such support, however, is not wanting. In the case of New Orleans v. United States, 10 Pet. 711, the supreme court of the United States, speaking of the alluvial formations at New Orleans, say: “ It appears that this quay has been greatly enlarged by the alluvial formations of the Mississippi river, and from this fact an argument is drawn against the right of use in the city, at least to the extent asserted. The history of the alluvial formations of this great river is interesting to the public, and still more so to the proprietors. The question is well settled at common law, that the person whose land is bounded by a stream of water, which changes its course gradually by alluvial formations, shall still hold hy the same boundary, including the accumulated soil. No other rule can be applied on just principles. Every proprietor whose land is thus bounded is subject to loss by the same means which may add to his territory, and, as he is without remedy for his loss in this way, he cannot he held accountable for his gain. This rule is no less just when applied to public than private rights. The case under consideration will illustrate the principle. If the dedication of this ground to public use be established by the principles of common law, is it not of the highest importance that the accumulations of the vacant space by alluvial formations should partake of the same character, and be *92 subject to the same use as tbe soil to which it becomes united? If this were not the case the city of New Orleans, by the continual deposits of the Mississippi river, would, in the course of a few years, be cut off from the river, and its prosperity impaired. If the city can claim the original dedication to the river, it has all the rights and privileges of a riparian proprietor.” The position here assumed is equally applicable to the present case, and we feel justified in holding, both upon principle and from authority, that the accretion under consideration partakes of the same character, and is held by the same tenure, as the original reservation.
3__right of iot owners. III. A further question, and perhaps- the most important one, is as to the nature and extent of the plaintiffs’ interest in the reservation and the accretion. Plaintiff's, in their petition, claim that they have the fee title, subject to the easement in the public.
In the case of The City of Dubuque v. Maloney, 9 Iowa, 458, Justice Stockton, announcing the opinion of the court, uses this language: “ It was within the discretion of the government, as the proprietor of the soil, in making sale of the lots, to sell only to the line of the street. But if lots are sold by their number on a plat, and if the lots are bounded by a street or highway, that circumstance raises a strong presumption of an intent to pass the soil to the center of the street or highway, and it will so pass accordingly unless the highway be clearly excluded.” Citing Witter v. Harvey, 1 McCord, 61; Newhall v. Iveson, 8 Cushing, 565; Adams v. Rivers, 11 Barb. S. C. 393; Adams v. R. R. Co., id. 414; 3 Kent’s Com. 433, 434; Town of Chatham v. Brainard, 11 Com. 60.
And in that case it was held that, in the city of Dubuque, which was organized unfier the same act ©f congress as the city of Burlington, the legal title to the soil of the streets, subject to the public easement, is vested in the owners of the lots on each side of the streets.
*93 That decision was based upon the fact that there was no express reservation of the streets from sale.
"While this is true of the streets generally, both in Dubuque and Burlington, it is not true of the strip of land in controversy. That was, by express terms of the grant, reserved from sale. And, as it was competent, as held in Maloney v. The City of Dubuque, for the government to make such reservation, the presumption arising from sale of contiguous lots.of an intention to pass the title to this strip of land is rebutted. In our. judgment, the plaintiffs, by their purchase of lots abutting upon 'this reservation, did not acquire the fee title therein; nor do we understand that this position is seriously insisted upon by appellant in his argument. See also Milburn et al. v. The City of Cedar Rapids et al., 12 Iowa, 247.
As the plaintiffs have not th&fee title to the reservation and accretion, have they any interest therein which they can protect in a court of equity? This question has not undergone direct judicial determination in this State. A cognate one was discussed and passed upon in Warren v. The Mayor of Lyons City, 22 Iowa, 351. In that case it was held that the officers of the city might be restrained by injunction, at the suit of the original proprietor and owner of adjacent lots, from a diversion of a public square to uses and purposes foreign to those for which the dedication was originally made. In that case, while the right of the plaintiff to relief was distinctly placed upon the ground of his being the original proprietor, and, as such, retwmvng such an interest in the subject of the grant as to entitle him, in a court of equity, to insist upon the execution of the trust as originally.declared and accepted, yet the opinion contains nothing which militates against his right to maintain such action as the owner of adjacent lots. Indeed, the opinion, taken together, seems to favor the view of the existence of such right. The learned justice uses this language: “The city, in this instance, claims, *94 under the act aforesaid, the absolute right to control and sell this property, insisting that plaintiff cannot be heard, either as the original proprietor, or as the owner of lots fronting on the sguare, to deny such right. This position, being held untenable, is decisive of the whole case.” It must be admitted that the fact of a location of a lot on a public square often gives it its chief value, and forms the principal consideration of the purchase. If, then, the interest of the lot owner in the square partakes so much of the nature of property, upon what principle of justice or reason shall he be denied the interposition of the courts, for the purpose of protecting and preserving this interest %
No good reason appears for sustaining this jurisdiction of a court of equity, when invoked by the original proprietor, which does not, with equal force, apply to the case of the owner of a lot abutting upon a public square.
And if the original proprietor has disposed of all his interest in the town, the reasons for interfering, upon the application of a lot owner, would seem to be much more apparent and cogent. The supreme court of Ohio, in the case of Street Railway v. Cummingsville, 14 Ohio, 523, in an opinion which, for its ability, and the wise and just solution of the questions presented, commends itself to the professional and judicial mind, recognized the distinction between the right of the public to use the street, and the right and interest of the adjacent owners. In that case the court say : “ While our decisions have been liberal in allowing the legislature the largest discretion in the management and control of easements acquired for public highways, we have been careful to say that they cannot be diverted to other purposes than those for which they are acquired, nor enlarged so as to accumulate additional burdens upon the land, or destroy or impair the incidental rights oí the owner, appurtenant to his lands located upon the street or highway. The distinction lies between those things which fairly belong to the grant and those which *95 are reserved to the owner, or by law attach as incidents to his property. For this purpose there is no occasion to distinguish between lands acquired for ordinary highways, leaving the fee in the owner, or lands dedicated for streets in towns, where the fee vests in the municipal corporation, in trust, to answer the purposes of the use. In either case the interest acquired and used by the public at large is an easement of a definite character, and held for the attainment of known objects. And in either ease distinct from the right of the public to use the street, is the right and interest of the owners adjacent. "With the fact known and appreciated by everybody, that a large part of the value of lots in towns was made up with reference to their location upon streets, and with a long course of decisions enforcing the liability of municipal corporations for invasions of this right, it still took nearly twenty years to bring it to a clear and definite description. But at length in the case of Crawford v. The village of Delaware, 7 Ohio St. 459, it was placed upon the true ground as a right of property, protected by the constitution, which could not be taken from the owner without compensation. The lot owners have a peculiar interest in the street which neither the local nor general public can pretend to claim ; a private right in the nature of an incorporeal hereditament legally attached to the contiguous grounds and the erections thereon ; an incidental title to certain facilities and franchises assured to them by contract and by law, and without which their property would be comparatively of little value. This easement appendant to the lots, unlike any right of one lot owner in the lot of another, is as much property as the lot itself, and it is well added by that enlightened tribunal, that, upon a doctrine so just and necessary, and resting upon foundations so solid and satisfactory,' it can matter very little that our conclusions are not concurred in by the courts of some of our sister states.”
*96 L_railroad-, right of way. Tbe decision of this court in the case of Millburn et al. v. The City of Cedar Rapids et al., 12 Iowa, 246, does not settle a principle adverse to the rights of the plaintiffs. In that case a proceeding was instituted by a lot owner to enjoin the construction of a railroad over the adjacent street. The lot owner claimed that he owned the fee in the street to the center thereof, and that the railroad could not appropriate it without obtaining the right of way, and making compensation; and that the use of a street in a city or town for a railway was inconsistent with the objects and purposes of its dedication, and amounted to a nuisance. It was in the discussion of the plaintiff’s claim to the ownership of the street that the court say: “ It is not true, then, that a purchaser of town property in this State takes a title in the fee of the same to the center of the street upon which it fronts, but the only interest which he possesses in or to the streets is that which is common to the whole public, the right of way over them.” It is apparent that the question before the court was in regard to the plaintiff’s ownership of the soil of the street, and had no reference to his easement in, or right of enjoyment of, the same. Taken in connection with the subject to which it was applied, the language above quoted does not conflict with the views herein adopted. In that case relief was denied the plaintiff, upon the ground that “ the laying down and operating a railway track over a part of a street is not an unreasonable obstruction of the free use, nor incompatible with its original dedication.” In this case, however, the bill alleges that the defendant intends to sell the reservation absolutely, which would constitute an entire diversion of it from the purposes for which it was originally reserved. We believe that both reason and authority sustain us in the view that the plaintiffs, by their purchase of these lots abutting this reservation, acquired such rights therein as will enable *97 them to enjoin a diversion of it to uses and purposes foreign to, and inconsistent with, the objects of the grant.
TV". The city bolds tbis reservation and tbe accretion “for a public highway, cmd other public uses.” Tbe construction of a railway is a public benefit, justifying, under tbe constitution, tbe condemnation of private property. It may fairly be considered to be provided for in tbe phrase other public uses, occurring in tbe act of congress. Nor is sucb use, under prior adjudications of tbis court, inconsistent with tbe specific use as a public highway mentioned in said act. In the case of Milburn et al. v. The City of Cedar Rapids et al., Lowe, C. J., after citing a number of authorities, bolds this language: “ Tbe leading idea or argument running through these authorities is, that tbe dedication of streets in a city to public use is without restriction, as it respects tbe right of way or mode of transit; that they are necessarily subjected to purposes far more extensive than common highways; that tbe very large control given to city governments over their streets, carries with it the power of modifying, abridging, and enlarging their use in tbe way that shall best subserve tbe interests and business of tbe city; that tbe laying down and operating a railway track over a part of a street is not an unreasonable obstruction of its free use, nor incompatible with its original dedication, but rather a new and improved method of using tbe same, germane to their principal object as a passage way, marking tbe progress of civilization in tbis age, and to which tbe genius of the law readily accommodates itself, as should also tbe genius and* habits of tbe people.” As tbe use, by tbe city, of tbis reservation and accretion, for tbe purpose of constructing thereon a railroad would be a public use, and not in violation of tbe terms of tbe grant, we can see no legal objection to tbe city conveying tbe same to a railroad company for right of way, and sucb other public uses as justify tbe exercise of tbe right of eminent domain. See *98 act of congress February 14, 1853, Statutes at Large, vol. 10, p. 157.
But tbe bill alleges an intention upon tbe part of tbe city to go much further than this. It charges that the city claims to hold the title to the said accretions, and that it tas the exclusive right to control, alienate and convey the same for private purposes, and has actually proposed and is intending and about to convey the same by deed to a corporation known as the Toledo, Peoria and Warsaw Railroad Company, to be held and used by it as its private property. The right to make such unqualified disposition does not reside in the city, and it is competent for a court of equity to restrain and control the attempt. It is objected that, if the city attempt to convey a greater interest than it possesses, the conveyance as to such excess will be void; hence no injury to plaintiffs will result, and no necessity for equitable interposition will exist. But if the railroad company acquire an absolute conveyance, it may alien to various grantees, and the plaintiffs in the end be driven to a multiplicity of suits for the protection of their rights. This it is the policy of the law to avoid. The right of a court of equity to interfere to prevent such conveyance as the petition in this case alleges is intended, was recognized in the case of Warren v. The Mayor of Lyons, before cited.
The demurrer should have been overruled.
Reversed.