SIMPLOT *v.* CHICAGO, M. & ST. P. RY. CO.

*(Circuit Court, N. D. Iowa, E. D.  1883.)*

1. RAILROAD—USE OF STREET FOR TRACKS—GRANT TO CITY OF DUBUQUE—ACTS OF CONGRESS OF JULY 2, 1836, AND MARCH 3, 1837—STATUTE OF LIMITATIONS —ESTOPPEL—JUDGMENT AGAINST CITY.

When the town of Dubuque was laid out by the acts of congress of July 2, 1836, and March 3, 1837, the United States caused a reservation to be made of a strip of land fronting on the Mississippi, the same being reserved for and dedicated to public use forever "for the purposes of a highway and for other public uses." In 1853 the United States granted this land to the city of Dubuque, providing, however, that this grant should "in no manner affect the rights of third persons therein, or to the use thereof, but should be subject to the same." This strip, then known as Front street, was used as a highway and for levee purposes, and subsequently portions of it were occupied by the tracks of railroad companies, and in 1874 the track now owned by the Chi-

cago, Milwaukee & St. Paul Railway Company was laid over a triangle forming part of Front street as originally laid out. At that time there was no building or fence or other erection on the land on which the track was laid. The plaintiffs had been in possession of this triangular tract for over 10 years, and during that time they had paid to the city certain sums assessed for the laying out, curbing, and paving of streets adjacent thereto, but they had full knowledge of the fact that this triangle was part of the public reservation. They claimed title to the land under three claims : (1) Adverse possession under the statute of limitations; (2) an equitable estoppel against the public; and (3) an adjudication by the district court of Dubuque county in their favor in *Simplot* v. *City of Dubuque;* and as owners of the land demanded damages from the railroad under the provisions of section 1244 of the Code of Iowa. *Held :*

(1) That, as the city of Dubuque was incorporated under a special charter, the provisions of section 464 of the Code were not applicable, and the owner of land abutting on a highway or street along which a railroad track was laid, could not recover damages unless he owned the fee in the soil over which the tracks passed; and as the title to this land was held by the city as a trustee for the furtherance of the public uses and purposes to which the property had been originally dedicated, title could not be acquired by adverse possession, and plaintiffs were not entitled to recover.

(2) That the act of the city in collecting the taxes was for its own benefit alone, and could not work an estoppel as against the general public, for whose use the triangle was dedicated, and plaintiffs could derive no title by reason of an estoppel.

(3) That as the railroad company did not acquire its sole right to use the street for its tracks from the city, but by virtue of the original act of congress, in dedicating this tract to public uses, it was not bound by the decree and judgment against the city in the case of *Simplot* v. *City of Dubuque,* to which it was not a party.

2. MUNICIPAL CORPORATIONS—STATUTE OF LIMITATIONS—ESTOPPEL IN PAIS.

When a municipal corporation seeks to enforce its private rights, as distinguished from rights belonging to the public, it may be defeated by force of the statute of limitations; but in all cases wherein the corporation represents the public at large or the state, or is seeking to enforce a right pertaining to sovereignty, the statute of limitations, as such, cannot be made applicable. In such cases, however, the courts may apply the doctrine of estoppel *in pais,* and by means thereof, when justice and right demand it, prevent wrong and injury being done to private rights.

This proceeding was instituted by the plaintiffs, under the provisions of section 1244 of the Code of Iowa, for the assessment of the damages claimed by plaintiffs to have been caused to their property by the construction and operation of the railroad track now occupied by the defendant corporation at and near the intersection of Iowa and First streets, in the city of Dubuque, Iowa.

The plaintiffs are, and have been for years, the owners of certain realty abutting on Iowa and First streets, and they claim that the track in use by the defendant is located upon their property to their damage; and, for the purpose of settling the amount of damages, the plaintiffs, under the provisions of section 1244 of the Code, made

application to the sheriff of the proper county for the appointment of commissioners as therein provided.

Upon the coming in of the report of the commissioners, both parties appealed to the circuit court of Dubuque county, and under the provisions of section 1254 the land-owners appeared in that court as plaintiffs, and the railway corporation as defendant, and thereupon the latter removed the cause to this court.

The cause coming up for trial before the court and jury, the defendant admitted in open court that the said Chicago, Milwaukee & St. Paul Railway Company, defendant herein, was the successor by purchase of the rights of the Dubuque, Bellevue & Mississippi Railroad Company; of the Chicago, Clinton & Dubuque Railroad Company; and of the Chicago, Clinton, Dubuque & Minnesota Railroad Company; that the track now used and owned by defendants was first used for railroad purposes in 1874, and had since then been used by the companies to whose rights this defendant had succeeded; that plaintiffs were the owners in fee-simple of lots 529 and 530, as platted on the original map of the town of Dubuque, as laid out by the commissioners appointed under the provisions of the act of congress of 1836. Thereupon the plaintiffs in open court admitted that the track operated by the defendant and the railroad companies under which it claimed, was not located upon any part of lots 529 and 530 as originally laid out; that it passed over a triangular piece of ground adjacent to said lots, which triangular piece of ground formed part of Front street, as shown on the original map of Dubuque; that Front street, as shown on that map, constituted the reservation which the commissioners had reserved for public uses, as provided for in said act of congress; that plaintiffs knew that said triangle was part of said reservation, and did not claim title thereto as being part of either lots 529 and 530; that they had no patent or conveyance of said triangle, but claimed title thereto under the statute of limitations, and under the decree rendered in the case of *Alexander and Charles Simplot* v. *The City of Dubuque,* in the district court of Dubuque county, Iowa.

A map or plat of the ground, showing its present condition and surroundings, was admitted in evidence, as well as a copy of so much of the original map of the town of Dubuque as shows the reservation of Front street, set apart for public uses, with lots 529 and 530, and surroundings.

Plaintiffs introduced in evidence the decree rendered in their favor against the city of Dubuque, in a cause instituted by them in 1874,

in the district court of Dubuque county, Iowa; and also introduced in evidence a written agreement signed by Amos H. Peaslee, then mayor of the city of Dubuque, William G. Stewart, and the plaintiffs, which provided for the laying down and taking up of the track across the triangle in question; and also introduced evidence showing that the track laid down under this agreement had not been taken up, although they had demanded that it should be removed, both of the city and William G. Stewart, as the representative of the Dubuque Harbor Company; that after Stewart was through with the use of the track, the Chicago, Clinton & Dubuque Railroad Company commenced the use of the track, placing a car on the same in the night-time, without the knowledge or consent of plaintiffs; that the Chicago, Clinton & Dubuque Railroad Company and its successor have ever since used the track and refuse to remove it.

The court directed the jury to find a special verdict in answer to certain questions submitted to them by the court, and these findings are to be read as part of this statement of facts.

Both parties moved for judgment upon the special findings or verdict of the jury. Upon consideration thereof, the court found and adjudged that the proceedings should be dismissed at cost of plaintiffs, for the reasons that plaintiffs had failed to show that they were the owners of the triangle over which the defendant's track is located, and that hence they could not recover damages in this proceeding, the grounds for which conclusion are more fully set forth in the following opinion.

*M. H. Beach,* for plaintiffs.

*W. J. Knight* and *D. S. Wegg,* for defendant.

SHIRAS, J. By the act approved July 2, 1836, congress provided for the "laying off the towns of Fort Madison and Burlington, in the county of Des Moines, and the towns of Bellevue, Dubuque, and Peru, in the county of Dubuque, territory of Wisconsin."

The act provided that the towns named should, under the direction of the surveyor general, be laid off into town lots, streets, avenues, and lots for public use called the public squares, and that, upon the completion of the survey of the lots, a plat thereof should be returned to the secretary of the treasury, and the lots should be offered for sale at public sale; it being further enacted "that a quantity of land of proper width, on the river banks, at the towns of Fort Madison, Bellevue, Burlington, Dubuque, and Peru, and running with said river the whole length of said towns, shall be reserved from sale (as

shall also the public squares) for public use, and remain forever for public use, as public highways, and for other public uses."

Under the provisions of this act of congress, and the act amendatory thereof, passed March 3, 1837, the town of Dubuque was laid out, and a plat thereof was executed and filed at Washington as required by the act.

The reservation provided for on the river bank was properly laid off and platted, and on the map was clearly indicated by well-defined lines.

In 1853 congress passed "An act for the relief of the town of Bellevue and the cities of Burlington and Dubuque," whereby there was granted to the cities of Burlington and Dubuque the land bordering on the Mississippi river, and reserved for public uses under the act of 1836, to be disposed of as the corporate authorities of said cities should direct; it being further provided "that the grant made by this act shall operate as a relinquishment only of the right of the United States in and to said premises, and shall in no manner affect the rights of third persons therein, or to the use thereof, but shall be subject to the same."

In the case of *Cook* v. *City of Burlington*, 30 Iowa, 94, the supreme court of Iowa construed this act of congress of 1853, and its effect upon the reservation provided for in the act of 1836, and reached the following conclusions:

(1) That under the act of 1836 the strip reserved was dedicated to public use, and that, after the sale of lots abutting thereon to individuals, the act making this dedication assumed the character of a contract which could not afterwards be abrogated and repealed; that after the passage of the act of 1836, and the sale of lots thereunder, the public acquired a right in this reserved strip for a highway and other public uses; and to the extent of the right acquired by the public, that of the government was limited and controlled. The use was dedicated to the public, and the act of congress making the dedication was in the nature of a contract which could not afterwards be repealed; that the title remained in the government, but was held in trust.

(2) That the act of 1853 had the effect of subrogating the city to the rights of the United States government in the property; that the power of absolute disposition did not reside in the government, and did not pass to the city; that the city took it for the same purposes for which the government held it, subject to the same trusts and affected by the same conditions; that it could dispose of it for public uses, but not for private uses; that having only a qualified title, the city cannot convey an absolute one.

(3) That the reservation was set aside "for public highway and for other public uses;" that the use thereof for the construction of a railroad along the same, came within the purposes of the dedication by the act of congress, it

being covered by the phrase "other public uses," even if it did not come within the use "for a public highway."

In the cases of *Milburn* v. *City of Cedar Rapids*, 12 Iowa, 247; *Clinton* v. *C. R. & M. R. R. Co.* 24 Iowa, 455; *C. N. & S. W. R. Co.* v. *Mayor of Newton*, 36 Iowa, 299, and other causes following the rulings therein announced, it was held by the supreme court of Iowa that a railroad might be located along a public street or highway without the consent of the city or town, and without compensation being made therefor, subject, however, to proper equitable control.

This rule remained the law of the state until the adoption of the Code of 1873, by section 464 of which it was enacted that cities shall have the power to authorize or forbid the location or laying down of tracks for railways, etc., along the streets and alleys, etc., and further providing for the payment of damages. This section, however, forms part of chapter 10, tit. 4, of the Code, known as "The General Incorporation Act," and does not apply to or in any manner affect the rights or powers of cities acting under special charters, of which Dubuque is now, and always has been, one.

In *Slatten* v. *Des Moines Valley R. R.* 29 Iowa, 148, it was ruled that the owners of property abutting on a street, the fee of which was in the city, could not recover damages for the injury to their property caused by the construction of a railroad along the street in front of their property.

This decision was upheld in *City of Davenport* v. *Stevenson*, 34 Iowa, 225; *Barr* v. *Oskaloosa*, 45 Iowa, 275; and other cases not necessary to cite.

In *Kucheman* v. *C., C. & D. Ry. Co.* 46 Iowa, 366, the question of the right of the owner to recover damages for the construction of a railway along a street, where the abutting owner owned the fee in the street, subject to the easement of the highway, was presented, and it was determined that if he owned the fee in the street, then he might recover damages, upon the theory that the construction of the railroad imposed an additional burden upon the soil, the title of which is in the abutting owner; that thereby his property is taken for public use, and he is entitled to damages.

In 1874, therefore, when the railway track complained of in this cause was operated for railroad purposes, the rules of law applicable thereto were as follows:

The city of Dubuque was incorporated under a special charter, and the provisions of section 464 of the Code of 1873 did not apply to Dubuque; therefore, if a railroad track was laid along a street or

highway, the abutting owner could not recover damages unless he owned the fee in the soil over which the track was laid; that if he owned property abutting on a highway, but did not own the soil or fee in the highway, then any damages he might suffer by the construction of a railroad along the highway were purely consequential and not recoverable.

The pivotal point, therefore, in the cause, is the question whether the plaintiffs were, in 1874, when the track now operated by defendant was first put in use, the owners of the soil or fee in the strip over which the track was laid and upon which it now remains.

The plaintiffs owned lots 529 and 530 as laid off on the original map of the town of Dubuque, but it was admitted in open court by plaintiffs that the triangle over which the railroad track was laid, did not form part of lots 529 and 530; that it was part of Front street,—that is to say, of the reservation dedicated to public use under the act of congress of 1836; that the plaintiffs never had had any patent or conveyance thereof from any source. The plaintiffs claimed, however, that they had had the open, adverse, and hostile possession of the triangle for more than 10 years before the track was laid down thereon, and that under the principles of the statute of limitations, and the doctrine of equitable estoppel, they were the owners of the triangle, and that their right had been recognized and adjudicated by the supreme court of Iowa, in a proceeding brought by them against the city of Dubuque.

As already shown, the land composing Front street was reserved from sale when the town of Dubuque was laid out, and the title thereto remained in the United States until 1853, when it was transferred to the city of Dubuque, under the conditions and limitations set forth in *Cook* v. *City of Burlington, supra*. The city never conveyed or granted the title to plaintiffs. Hence plaintiffs must establish their title without the aid of a grant or conveyance, actual or supposed, of the record or fee title.

In the case of *Ingram* v. *C., D. & M. R. Co.* 38 Iowa, 676, a case brought to recover damages for the construction of a railroad along this same Front street in Dubuque, it was ruled that plaintiffs therein, who were owners of abutting property, could not recover; that the company had the right, *without the consent of the city*, to construct its track along Front street.

Plaintiffs claim title to the triangle in question under three claims: (1) Adverse possession under the statute of limitations; (2) an equitable estoppel against the public; (3) an adjudication in their favor

in the case of *Simplot* v. *City of Dubuque*, which they rely upon as binding upon the defendant and the public at large.

In the special verdict returned by the jury they found that the plaintiffs had been in the open, adverse, and continuous possession of the triangle for more than 10 years previous to the location and operation of the railroad track across the same in 1874.

The legal proposition to be determined, therefore, is whether plaintiffs can avail themselves of the statute of limitations to establish a title to this triangle, as against the public and the defendant. The defendant claims the right to operate its railroad track across the triangle, because the same forms part of the reservation set apart under the act of congress for public uses. By the act of congress this reservation was forever dedicated to public use. It was reserved from sale when the other lots in the town of Dubuque were sold to private parties, and by express dedication it was set apart for the purposes of a public highway, and for other public uses. Thus the United States government exercised its undoubted power to dispose of this property as in its judgment was wisest and best for the interests of the public.

When congress in 1853 transferred the title to this strip of land to the city of Dubuque, it simply substituted the city as a trustee, to hold the title, subject to all the conditions and liabilities to which the property was subject when the title stood in the United States. This is expressly held by the supreme court of Iowa in *Cook* v. *City of Burlington, supra.*

Could the legislature of Iowa, or the people thereof, in their sovereign capacity, in any manner authorize or empower the city of Dubuque, or any citizen thereof, to divert said reservation to a private use, or to a use inconsistent with and destructive of the purposes contemplated in the original dedication of it to public use, as declared in the act of 1836?

In the act of congress approved March 3, 1845, providing for the admission of Iowa into the Union, as a condition thereto it was required that the state should agree, by ordinance, that it would never "interfere with the primary disposal of the soil within the same by the United States, nor with any regulations congress may find necessary for securing the title in such soil to the *bona fide* purchasers thereof."

By an act and ordinance of the general assembly of Iowa, under date of January 15, 1849, this proviso was accepted, and was made irrevocable and unalterable.

In the case of *King* v. *Ware*, 53 Iowa, 97–100, [S. C. 4 N. W. Rep. 858,] the supreme court of Iowa held that under the terms of this ordinance "it was not within the power of the state to question his title by escheating the lands, or nullifying the sale made by the United States in any other manner."

If, then, this reservation was dedicated to public use forever, by the act of 1836, when the title thereof was in the United States, and if the act of 1853, as is held by the supreme court of Iowa in *Cook* v. *City of Burlington,* did not change or abrogate this dedication, but operated only to change the holding of the title from the United States to the city of Dubuque, then the property remained for public use by the express provisions of the act of congress, and this constitutes a primary disposal of the property by the United States, which it is beyond the power of the state of Iowa to abrogate or nullify in any manner. In other words, if the legislature of Iowa should enact that this reservation should no longer be used for public purposes and uses, but should be sold by the city for private use, such an act of the legislature would be wholly void under the ordinance above referred to.

If, then, it be true that the state of Iowa cannot lawfully defeat or nullify the primary disposal of the lands within its borders by the United States, can it be done indirectly through the operation of its statutes of limitations, in cases like the one now before the court? If the United States grant land to A. in fee, and B. occupies same adversely for the requisite time, he will obtain a title against A., but this does not affect or defeat the title conveyed by the United States to A. The right and title acquired by possession take the place of an actual conveyance from A. to B., and as A. has the absolute right to convey the lands to B., the latter can acquire them by adverse possession. If, however, the United States reserves lands in Iowa for a public use, and dedicates them to such use, so that the trust has attached to the naked title in the hands of the government, and then the government conveys the same to A. to be held by him for the public and for the public uses only, he having the right to convey the same for such uses, could B. in such case, by invoking the statute of limitations of the state, obtain the title and ownership of such land, when it is expressly provided in the organic law of the state that it shall not interfere with the disposition of the soil thereof, made by the United States?

That the United States did primarily dedicate and set apart their land to the public use forever is admitted.

If B. can, by invoking the statute of limitations of the state, be declared the owner of the land as his private property, then it is clear that thereby the disposition of the land by the United States has been defeated.

The legal mode by which this has been accomplished, if it has been done, is through the operation of a statute of the state. Can such a result be permitted without violating the terms of the compact between the state and the United States, by which the former bound itself never to interfere with the disposal by the United States of the land within the boundaries of the state.

Suppose, after Iowa had become a state, the general assembly had passed an act providing that any and all persons who should cultivate any portions of these reservations, and pay taxes thereon for a period of five or ten years, should be deemed the owners in fee thereof, could it be possible that such an act could be upheld, in the face of the express compact entered into with the United States? If not, wherein would such an act, in effect, differ from the claim that is now made under the general statute of limitations?

In the case of *King* v. *Ware*, already cited, the supreme court of Iowa held that where the United States had granted lands to a non-resident alien, at a time when, under the laws of Iowa, such aliens could not hold lands in Iowa, but the same were liable to be escheated, that this statute could not be invoked to defeat the title conveyed by the United States. The right of disposition was with the United States, and could not be defeated by the effect of any statute of the state. This case is in point, and in effect holds that the state cannot, by the effect of its general statutes, defeat the primary disposition made by the United States of any lands in Iowa. Applying this principle to the case at bar, it would follow that plaintiff cannot, by invoking the aid of the statute of limitations of the state, defeat the operation of the act of 1836, whereby Front street was forever reserved from sale to private parties and dedicated to public use.

A further question is presented by this branch of this case, to-wit, whether the plaintiffs can rely on adverse possession as giving them a good title against the public.

The plaintiffs claim that the interests and rights of the public are wholly vested in and represented by the city of Dubuque, and while they admit that so long as the title remained in the United States they could not get the benefit of the statute of limitations, yet that, when the title was relinquished by the United States to the city in 1853, then the statute would run in their favor. It must be kept in

mind that this strip or reservation was not conveyed to the city as its private property. The public retained its full rights therein, and the city held the title as a trustee for the furtherance of the public uses and purposes to which the property had been originally dedicated. Under such circumstances can the right of the public to the use of the reservation be defeated by showing an adverse posesssion within the meaning of the statute of limitations?

In Dill. Mun. Corp. (3d Ed.) § 675, the following is stated to be the correct view of the question:

"Municipal corporations, as we have seen, have, in some respects, a double character,—one public, the other (by way of distinction) private. As respects property not held for public use, or upon public trusts, and as respects contracts and rights of a private nature, there is no reason why these corporations should not fall within limitation statutes, and be affected by them. For example, in an action on contract or for tort, a municipal corporation may plead, or have pleaded against it, the statute of limitations. But such a corporation does not own and cannot alien public streets or places, and no laches on its part or on that of its officers can defeat the right of the public thereto; yet there may grow up, in consequence, private rights of more persuasive force in the particular case than those of the public. It will, perhaps, be found that cases will arise of such a character that justice requires that an equitable estoppel shall be asserted, even against the public; but if so, such cases will form a law unto themselves, and do not fall within the legal operation of limitation enactments. The author cannot assent to the doctrine that, as respects public rights, municipal corporations are within ordinary limitation statutes. But there is no danger in recognizing the principle of an *estoppel in pais*, as applicable to such cases, as this leaves the courts to decide the question, not by the mere lapse of time, but by all the circumstances of the case to hold the public estopped or not, as right or justice may require."

In the case of *Burlington* v. *B. & M. R. R. Co.* 41 Iowa, 141, the supreme court of Iowa recognized the true rule to be that when the city laid aside its sovereignty and placed itself in the position of a contracting party and dealt with the individual, not as a subject, but as a natural person, it then subjected itself to the provisions of the statute of limitations.

In *Pella* v. *Scholte*, 24 Iowa, 298, it was held that the statute could be successfully pleaded against the city, when it sought to enforce *its* rights to a square alleged to have been dedicated to the use of the citizens; but it was also announced that this ruling "would not necessarily apply to a case where the dedication was general, unlimited, and for the whole public, and not restricted, or for the primary benefit of the contemplated municipality, and hence under its special control and guardianship; or to a case where the public corporation was

ignorant of its rights or those of the public, or that these had been encroached upon, or that a hostile right was being asserted against it; or to a case where the action was by the state or its public officer to assert the public rights, and not the municipal corporation to assert its rights."

In *Davies* v. *Huebner*, 45 Iowa, 574, the court quotes the foregoing extracts from *Pella* v. *Scholte* approvingly, and further says:

"It will be readily seen that a distinction is here made between the rights of a municipal corporation and those of the state or the general public. We believe the weight of authority is that the statute does not run against the general public because of the adverse possession of a highway established in the manner prescribed by law. Whether this rule should prevail in this state we do not determine; and yet we believe there are cases where the non-user has continued for such a length of time, and private rights of such a character have been acquired by long-continued adverse possession, and the consequent transfer of lands by purchase and sale, that justice demands the public should be estopped from asserting the right to open the highway."

These decisions by the supreme court of Iowa, it seems to me, are in accord with the principles laid down in Dillon on Municipal Corporations, and that the true rule is that when a municipal corporation seeks to enforce a contract right, or some right belonging to it in a proprietary sense, or, in other words, when the corporation is seeking to enforce the private rights belonging to it, as distinguished from rights belonging to the public, then it may be defeated by force of the statute of limitations; but in all cases wherein the corporation represents the public at large or the state, or is seeking to enforce a right pertaining to sovereignty, then the statute of limitations, as such, cannot be made applicable.

In the latter cases, the courts may apply the doctrine or principle of an estoppel, and by means thereof, where justice and right demand it, prevent wrong and injury from being done to private rights.

In the case at bar, the plaintiffs are seeking, by the aid of the statute of limitations, to defeat the right of the defendant corporation to use the reservation known as Front street for one of the public uses to which it was dedicated by the act of congress. Even if the city of Dubuque was a party to this litigation, and the statute was technically pleaded against the city, I do not think it could be held good, for the reason that the city would then be representing a public right, of the nature of sovereignty, and in that case, in my judgment, the statute cannot be successfully pleaded. The city, however, is not a party to the record. The defendant is operating its line of road

over a part of Front street, in strict accordance with the uses and purposes for which the reservation was dedicated to the public.

The plaintiffs seek to show that they have become the owners of a part of Front street, and have defeated the right of the public thereto, by reason of the statute of limitations.

To such a case, arising under the circumstances shown herein, in my judgment the statute is inapplicable, and plaintiffs cannot make out their title to the triangle in dispute by force of the statute.

2. The next question for decision is whether, under the facts of the case, plaintiffs are entitled to estop the defendant corporation from questioning their title to the portions of the triangle occupied by the railroad company. In most of the cases wherein this doctrine of estoppel has been recognized, it has been applied to protect a defendant from being disturbed in the possession of rights which have been acquired by long-continued adverse possession. It has been used as a shield for protection, not as a weapon of attack. In the case at bar, the defendant corporation has been occupying and using the railroad track over the triangle ever since it purchased the right of the Chicago, Clinton, Dubuque & Minnesota Railroad Company, in 1881. And that company and its predecessors had been using the track since 1874.

The object of this proceeding is to compel the defendant to pay damages to plaintiffs for using this track, on the ground that the track is located upon the property of plaintiffs, and therefore plaintiffs are entitled to damages. When the defendant denies the ownership of plaintiffs, and challenges the plaintiffs to produce the evidence of such ownership, the reply is that the defendant and the public are estopped from questioning plaintiffs' title.

What are the facts relied on as the basis of an estoppel? They are: (1) Adverse possession for ten years or more; (2) payment by plaintiffs to the city of Dubuque of certain assessments levied for the curbing and paving the streets of the city adjoining the triangle and lots 529 and 530; (3) the judgment obtained by plaintiffs in the case against the city of Dubuque.

The jury found that plaintiffs had been in adverse possession of the triangle for more than 10 years; that when the railroad track was laid down and operated, there were no buildings, fences, or erections thereon which had to be removed to make way for the track; that plaintiffs had never put that portion of the triangle on which the track was placed to any use inconsistent with its use for railroad purposes.

It was admitted in open court, on behalf of the plaintiffs, that they knew that lots 529 and 530, as laid out, did not embrace the triangle. The map of Dubuque clearly and unmistakably shows that the triangle formed part of Front street; that is to say, of the reservation set apart for public use. The jury expressly found that plaintiffs, from and after 1865, knew that the triangle was part of Front street, and the evidence no less clearly shows that plaintiffs and their father, from whom plaintiffs inherited the property, had such knowledge from the time of the original purchase of lots 529 and 530.

In the case of *Brant* v. *Virginia Coal Co.* 93 U. S. 335, the general rules governing the doctrine of equitable estoppel are fully stated as follows: "For the application of that doctrine there must generally be some intended deception in the conduct or declarations of the party to be estopped, or such gross negligence on his part as to amount to constructive fraud, by which another has been misled to his injury." "In all this class of cases," says STORY, "the doctrine proceeds upon the ground of constructive fraud or of gross negligence, which, in effect, implies fraud; and therefore, when the circumstances of the case repel any such inference, although there may be some degree of negligence, yet courts of equity will not grant relief. It has been accordingly laid down by a very learned judge that the cases on this subject go to this result only: that there must be positive fraud or concealment, or negligence so gross as to amount to constructive fraud." 1 Story, Eq. 391. To the same purport is the language of the adjudged cases. Thus it is said by the supreme court of Pennsylvania that "the primary ground of the doctrine is that it would be a fraud in a party to assert what his previous conduct had denied, when on the faith of that denial others had acted. The element of fraud is essential, either in the intention of the party estopped, or in the effect of the evidence which he attempts to set up. * * * And it would seem that to the enforcement of an estoppel of this character, with respect to the title of property, such as will prevent a party from asserting his legal rights, and the effect of which will be to transfer the enjoyment of the property to another, the intention to deceive and mislead, or negligence so gross as to be culpable, should be clearly established. * * * It is also essential for its application, with respect to the title of the real property, that the party claiming to have been influenced by the conduct or declarations of another to his injury, was himself not only destitute of knowledge of the true state of the title, but also of any convenient and available means of acquiring such knowledge. Where the con-

dition of the title is known to both parties, or both have the same means of ascertaining the truth, there can be no estoppel."

In the case at bar the plaintiffs have always known that this triangle formed part of Front street. They have always known that it did not form part of lots 529 and 530, owned by them. They have always known that they had no record title thereto. They have always known that the triangle formed part of a strip of land reserved from sale to private parties, and formally, expressly, and fully dedicated to the public for public uses and trusts forever. With this knowledge on their part, how can it be said that they have been misled to their injury? Who has misled them or deceived them? No one. In their own wrong they entered into possession of the triangle. When the city of Dubuque called on them for payment of assessments for curbing and paving the city streets around the triangle, they paid these sums knowingly, and without any fraud being practiced upon them by the public. They have not erected any buildings or permanent improvements upon the premises, and, as is expressly found by the jury, they have not put the portion of the triangle occupied by the railroad to any use inconsistent with its use for railroad purposes.

There are many cases to be found in the books wherein it has been held that where parties have erected valuable buildings or other permanent improvements, which have encroached upon public highways, and the same have remained undisturbed for the requisite time, then the public will be estopped. In these cases, however, it will generally be found that the portion of the highway that is taken is but small, or that another highway can be readily laid out, and that the injury caused to the public is but small compared to the loss and injury that would be caused to the individual by the destruction of his buildings or other improvements. These cases also show that the use to which the property has been put is clearly inconsistent with its subsequent use as a highway; and hence it may well be that the public should have interfered when the buildings were being erected, because in those cases the public were clearly warned that the individual was asserting rights adverse to the public, and putting the property to a use wholly inconsistent with its use for public purposes. Such cases, however, form no rule for the decision of the case at bar, which must be viewed in the light of its own facts.

It is true that the plaintiffs paid the city of Dubuque certain sums assessed against the property for the curbing and paving of the streets adjacent to the triangle, but how was knowledge of this fact brought

home to the public? Even if knowledge of such fact was chargeable to the public, what duty did such knowledge charge upon the public? The public nor the railroad company could not prevent the city from demanding, or the plaintiffs from paying, these assessments. It was a matter with which they had no concern and no responsibility.

When the city seeks to collect a tax or assessment that is due to it, it is enforcing a proprietary right, or, in other words, is collecting a debt due it, and is not acting for or representing the public in so doing. This Front-street reservation was not dedicated to the use of the city of Dubuque, nor of its citizens alone, but was dedicated to the use of the general public. The general public, however, had no right or interest in the assessments collected by the city of the plaintiffs, and could not have interposed to prevent such collection. When collected the general public derived no benefit therefrom. How, then, can it be claimed that the act of the city in making this collection for its own use and benefit, binds or estops the general public? The city itself may be estopped, and the supreme court of Iowa has so held; but such estoppel cannot be held to extend to rights and interests which were not represented by the city when doing the act which, it is held, works an estoppel upon the city.

The city of Dubuque, in the exercise of the powers granted by its own charter, had laid out a street over a part of this reservation; that is to say, it extended Iowa street diagonally across Front street. It then required the plaintiffs to pay for the curbing and paving of Iowa and First streets. By these acts of the city it was shown that the city did not include the triangle within the streets laid out by it. Hence it might well be that the city should be estopped from claiming the triangle to be part of its streets; but, in my judgment, that does not work an estoppel upon the public in regard to the use of the remaining portion of Front street. The public does not derive its rights thereto from the city of Dubuque, nor through its acts under its charter, but the same are conferred directly by the act of congress of 1853.

The evidence in this case shows that Front street was for some years used as a levee and public highway, and in 1871 the city granted ordinances authorizing the laying down of railroad tracks over different portions thereof.

Without further elaboration, however, of this point, my judgment is that the facts disclosed by the evidence do not warrant the court in holding that the public are estopped from asserting the right to the use of this triangle for public purposes, or that the rights of plain-

tiffs are of such a character as to require the court to find an estoppel for their protection.

3. It is urged, however, on behalf of plaintiffs, that the defendant is bound by the decree and judgment rendered in the case of *Simplot* v. *City of Dubuque*, and is thereby estopped from asserting that plaintiffs have no title to the premises occupied by defendant's track. This claim goes upon the theory that the railway company derives its right to occupy the premises in question solely from the ordinance of the city granting the right to the Dubuque, Bellevue & Mississippi Railroad Company to place its track along Front street. Assuming for the moment that the defendant claims only through this ordinance and grant from the city, does it follow that the defendant is bound by the judgment against the city? The ordinance granted by the city to the Dubuque, Bellevue & Mississippi Railroad Company was adopted in 1871. The railroad track was laid and used for railroad purposes in 1874. After such use thereof the plaintiffs herein brought an action against the city alone. The suit, therefore, was commenced after the grant from the city to the railroad company, and after the use and occupation of the premises by the company. How, then, does the result of this suit, to-wit, the decree rendered in favor of the Simplots against the city, bar or bind the defendant, even if the latter does hold only under the grant from the city?

In Bigelow, Estop. (3d Ed.) 94, it is said:

"Thus an assignee is not estopped by judgment against his assignor in a suit by or against the assignor alone, instituted after the assignment was made, though if the judgment had preceded the assignment the case would have been different. Hence privity in estoppel arises by virtue of succession. Nor is a grantee of land affected by judgment concerning the property against his grantor, in the suit of a third person begun after the grant. Judgment bars those only whose interest is acquired after the suit, excepting, of course the parties."

If, then, it be the rule that a judgment bars only those whose interest is acquired after the institution of the suit, it is clear that in this case the defendant cannot be barred by the decree in the case against the city, even if the defendant be treated as a grantee of the city. Under the doctrine recognized in *Ingram* v. *C., D. & M. R. Co. supra*, the defendant gets its right to occupy the premises in question for its railroad track under the provisions of the act of congress of 1836, and the right-of-way act of the state of Iowa; and under the rule recognized in this case, following, as it does, the earlier cases of *City of Clinton* v. *C. R. & M. R. R. Co.* 24 Iowa, 455; *C., N. & S. W. R. Co.*

v. *Newton,* 36 Iowa, 299, the defendant herein is not dependent upon the ordinances of the city as the source of its right to maintain and operate its track over the triangle in question, the same being part of Front street as defined on the commissioners' map of the town of Dubuque; but, on the contrary, without any authority or grant from the city, or even in the face of prohibitory action upon part of the city, the defendant, subject to equitable judicial control, had the right, under the act of congress, to maintain and operate its track in its present location. This being true, it follows unquestionably that the defendant cannot be barred or estopped by the effect of a decree rendered in the case of *Simplot* v. *City of Dubuque,* as the defendant was neither a party or privy thereto.

Briefly stated the facts are as follows: When the town of Dubuque was laid out, the United States caused a reservation to be made of a strip of land fronting on the Mississippi river, the same being reserved for and dedicated to public use forever, "for the purposes of a highway and for other public uses." This was not a reservation or dedication for Dubuque or its citizens alone, but for the general public. This strip, known then as Front street, was used as a highway and for levee purposes. Subsequently, when railroads came into use in the west, portions of Front street were occupied by the tracks or rails of these companies, and in 1874 the track now owned by the defendant was laid over the triangle in dispute, which it is admitted forms part of Front street as originally laid out. When this track was laid down there was no building, fence, or other erection on the land upon which the track was laid.

The plaintiffs claim that by 10 years' or more adverse possession they have defeated the rights of the public in and to this portion of Front street, in such sense that they are now the owners thereof as against the public.

The evidence shows that in all the plaintiffs did in connection with this property they acted with full knowledge of the fact that this triangle was part of the public reservation, and was not part of lots 529 and 530, and that through no act on part of the public were the plaintiffs in any way misled or deceived. The plaintiffs have never erected any building or permanent erection upon these premises.

It is shown that plaintiffs, when called upon, paid certain sums for curbing and paving the streets laid out by the city adjacent to the triangle. It is also shown that plaintiffs leased this triangle and received rent for its use, but it is not shown what amount was received for its use. In leasing the triangle, the plaintiffs informed the lessee

that their right to the premises might be disputed, and that the plaintiffs would not guaranty his possession.

In my judgment the original dedication by act of congress of Front street to public use cannot be defeated by reason of the facts shown in this case. They fall far short of showing an estoppel upon the public, and hence the plaintiffs fail to show a title or ownership in the premises which would entitle them to claim damages for the use thereof for railroad purposes, under the law as it was in force in 1874. Consequently the proceedings should be dismissed at costs of plaintiffs.