BENNETT v. CHICAGO, M. & ST. P. RY. CO.

(Circuit Court, N. D. Iowa, E. D.    April 28, 1896.)

1. DEDICATION—PUBLIC USE.

 The town of D., Iowa, was originally laid out under the provisions of an act of congress of July 2, 1836, which directed that a strip of land, of proper width, running with the Mississippi river the whole length of the town,

should be reserved from sale, for public use, and remain forever for public use, as a public highway, and for other public uses. This strip was used at first as a river landing, but, after a change in the river channel, lines of railway were constructed along it. *Held,* that such act of congress dedicated the reserved strip to the public for the purposes of a public highway and other public uses, which included its use for a railway, and that it is not within the power of the state of Iowa to authorize the city of D. to forbid the location of a railway along the strip, or to impose burdens upon the proper use of the strip by requiring damages to be paid to owners of lots abutting thereon.

2. SAME—RIGHTS OF OWNER OF LAND ON HIGHWAY.

    *Held,* further, that a purchaser of land abutting on the strip took the same subject to the right of the public to use the strip, and had no legal or equitable ground of complaint in the use of the strip for railway purposes.

Bill to restrain the defendant from operating so much of its line of railway as lies adjacent to the property of complainant, in the city of Dubuque, until complainant's damages have been ascertained, and compensation has been made therefor. Submitted on pleadings and proofs.

Lyon & Lenehan and Henderson, Hurd, Daniels & Kiessel, for complainant.

W. J. Knight, for defendant.

SHIRAS, District Judge. The town of Dubuque was originally laid out under the provisions of an act of congress approved July 2, 1836, which, among other requirements, directed:

"That a quantity of land of proper width, on the river banks, at the towns of Fort Madison, Bellevue, Burlington, Dubuque, and Peru, and running with said river, the whole length of said towns, shall be reserved from sale (as shall also the public squares), for public use, and remain forever for public use, as public highways, and for other public uses."

When the town of Dubuque was laid out under the provision of this act, the Mississippi river flowed through an outer and an inner channel in front of the town, there being a number of islands in the river: and the commissioners appointed under the act located the so-called "reserved strip" upon the inner channel, which for years thereafter constituted the steamboat landing of the town. Subsequently, the place of landing was changed to the outer or main channel, and a large part of the inner channels has been filled up, and streets have been built out to the main channel. Since the reserved strip has ceased to be used as a river landing, lines of railway have been constructed by different companies, and are now operated, along a large portion of the strip; but part thereof has been divided up into lots, and buildings have been erected upon different parts thereof. In the year 1874, the track which now constitutes the main line of the defendant company was constructed along the reserved strip, and within the limits thereof; and in 1881 a side track was built by the defendant within the limits of the reserved strip, which side track passes in close proximity to a barn and other buildings erected and owned by the complainant. In effect, the purpose of the bill filed in this case is to compel the defendant company to pay damages to the complainant for thus constructing the side track upon such strip.

In the case of Simplot v. Railway Co., 16 Fed. 350, the question came before this court whether an owner of lots adjacent to this strip could recover damages for the construction of the main line of the defendant's road along said strip, the same having been built in the year 1874, and the conclusion was reached that such damages were not recoverable. In that case it was stated that under the decisions of the supreme court of Iowa in Milburn v. City of Cedar Rapids, 12 Iowa, 247, Clinton v. Railroad Co., 24 Iowa, 455, and Chicago, N. & S. W. R. Co. v. Mayor of Newton, 36 Iowa, 299, it was the law, previous to the adoption of the Code of 1873, that in cities and towns laid out under the general incorporation law of the state, wherein the title of the lot owners extended only to the side lines of the streets, the ownership of the soil underlying the street being in the public, the abutting owner could not recover damages for the construction and operation of a railroad along the street, but that in cases where towns or cities had been laid out under special charters, by whose provisions the title of the abutting lot owner went to the center of the street, damages might be awarded upon the theory that the building and operation of a railway imposed an additional burden upon the property of the lot owner, and the damages were not therefore consequential, but direct; the latter doctrine being settled by the decision in Kucheman v. Railway Co., 46 Iowa, 366. It was further held by this court that the provisions of section 464 of the Code of Iowa of 1873 were not applicable in 1874 to cities acting under special charters, of which Dubuque was and is one, and that Simplot, the plaintiff in that case, could not claim any rights under that section of the Code. In the present case it is shown that by chapter 96 of the Acts of the 18th General Assembly of the State of Iowa, adopted in 1880, the provisions of section 464 of the Code are made applicable to all special charter cities; and the contention of the complainant is that, under this section, he is entitled to damages for the construction of the side track which was built after the adoption of the act, bringing special charter cities within the purview of section 464, which reads as follows:

"They shall have power to lay off, open, widen, straighten, narrow, vacate, extend, establish, and light streets, alleys, public grounds, wharves, landings and market places, and to provide for the condemnation of such real estate as may be necessary for such purposes. They shall also have power to authorize or forbid the location and laying down of tracks for railways, and street railways, on all streets, alleys, and public places; but no railway track can thus be located and laid down until after the injury to property abutting upon the street, alley or public places upon which such railway track is proposed to be located and laid down, has been ascertained and compensated in the manner prescribed for the taking private property for works of internal improvement, in chapter four of title ten of the Code of 1873."

If the contention of complainant is well founded,—to wit, that the provisions of this section, in their entirety, are applicable to the so-called "reserved strip,"—it follows that it is now within the power of the city of Dubuque, not only to forbid the construction of any other lines of railway along this strip, but it may vacate the same as a public highway or place, and thus, in effect, nullify the act of

congress under the provisions of which it was originally reserved for public use.

In the case of Simplot v. Railway Co., supra, this court held that the act of congress of 1836 expressly reserved this strip from sale to private parties, and dedicated the same to the public, to be used as a public highway, and for other public uses, which included its use for railway purposes, as was expressly ruled in Cook v. City of Burlington, 30 Iowa, 94. In that case the supreme court of Iowa, in ruling upon the effect of the reservation contained in the act of congress of 1836, held as follows:

"This statute operated as a qualification upon the title of the government. Before its passage, this title was absolute, uncontrolled, and the jus disponendi, for any and all purposes, was unaffected. After its passage and the sale of lots thereunder, the public acquired a right in this reserved strip for a highway and other public uses; and, to the extent of the right acquired by the public, that of the government was limited and controlled. The absolute power of disposition was gone. The use was dedicated to the public. The act of congress making this dedication was in the nature of a contract, which could not afterwards be abrogated or repealed. Vide Barclay v. Howell's Lessee, 6 Pet. 498; City of Cincinnati v. White's Lessee, Id. 430; New Orleans v. U. S., 10 Pet. 711, 721. The title still remained in the government, but it was held in trust, and burdened with conditions. The government had the power to grant this title, but could confer no greater interest than itself possessed. The grantees must take it with the same qualifications, subject to the same conditions, and burdened with the same trusts, which attached to it in the hands of the grantor. This being the tenure by which the property was held, the United States, by act of congress of February 14, 1853, relinquished the title of said property to the city of Burlington, on the condition that 'it should in no manner affect the rights of third persons therein, or the use thereof.' The effect of this statute was to subrogate the city to the rights of the government in this property; and, as the power of absolute disposition did not reside in the government, such power did not pass to the city. The city took it for the same purposes for which the government held it, subject to the same trusts, and affected by the same conditions. The city acquired the right to dispose of it for public uses, because it was reserved to such uses by the government."

In the Simplot Case, this court pointed out that by the express provisions of the act of congress approved March 3, 1845, under which Iowa became a state, and the act of the general assembly of January 15, 1849, it was declared that the state should never interfere with the primary disposal of the soil within the state by the United States. And this court held that the dedication of the so-called "reserved strip" by the act of congress of 1836, for the purposes of a public highway and other public uses, was a primary disposal thereof, within the meaning of the restriction contained in the act providing for the admission of Iowa as one of the states of the Union; and, therefore, that it was beyond the power of the state of Iowa to change, defeat, or restrict the dedication of the strip to public uses. And following the ruling of the supreme court of Iowa in the case of Cook v. City of Burlington, supra, this court further held that the transfer of the legal title to the strip from the United States to the city did not in any way affect the public right to the strip, nor change the public uses to which it was subject. I now see no good reason for changing the views expressed in that case, and I therefore hold in this case that as the act of congress of

1836 dedicated this reserved strip to the public, for the purposes of a public highway, and for other public uses, which includes its use for the building and operation of a railway, it is not within the power of the state of Iowa to authorize or empower the city of Dubuque to forbid the location of a railway line along the same, nor can the state empower the city to impose burdens upon the proper use of the strip for public purposes, by requiring damages to be paid to owners of lots abutting thereon, nor can the state directly impose a burden of this character upon the public; and I further hold that the complainant has no legal or equitable ground for complaint in that the strip in question is used for railway purposes. When the complainant purchased the property abutting on this strip, he took the same subject to the right of the public to use the strip for a public highway and for other public uses. The title of complainant does not extend to the soil underlying the strip, as is expressly held in Cook v. City of Burlington, supra; and there is no ground for holding that the property of complainant has been subjected to a new burden by the laying down of a railway track thereon. The situation is simply this: When the complainant bought the property now held by him, it abutted upon a strip of land which had been dedicated by the United States to public use, for highway and other public uses; and the complainant, therefore, bought his property subject to the right of the public to use the reserved strip, for the purposes to which it had been dedicated; and he is not now entitled to demand compensation or damages by reason of the fact that the strip is being used for one of the public purposes for which it was originally dedicated.

On behalf of complainant, it is strongly urged in argument that, unless the provisions of section 464 of the Code of Iowa are held applicable in their entirety to this reserved strip, the right of the state and city to exercise, in the interest of the general public, proper control over the strip when used for railway purposes, must be denied; but this does not follow. The affirmation of the right to use the strip for railway purposes under the original dedication contained in the act of congress, without being liable for consequential damages to abutting owners, is not a denial of the right and power of the state and city to enact and enforce all proper rules and regulations for the government of the companies in the use of the strip for railway purposes. The police power of the state may be exercised over the strip, within proper limits, subject to the paramount right conferred upon the public by the act of congress to use the strip for a public highway and other like purposes; but this power of limited control does not confer upon the state the power to wholly forbid the use of the strip for a purpose within the scope of the original dedication, or to burden such use with the condition that damages must be paid to abutting owners as a condition precedent to its exercise.

Bill dismissed, upon the merits, at cost of complainant.